CONSTANCE C. FRACKELTON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 106474. Promulgated April 7, 1942.

884

*David A. Gaskill, Esq.*, for the petitioner.
*Thomas F. Callahan, Esq.*, for the respondent.

## OPINION.

SMITH: The principal question presented by this proceeding is whether the petitioner is liable to income tax upon the difference between the cost to her of two 15-year endowment policies on the life of her husband and their maturity value in 1938.

The respondent gives as his reason for including in the petitioner's gross income for 1938 the amount of $51,179.85 representing the difference between the alleged cost of the policies and their value at maturity, that the amount is taxable under the provisions of section 22 (a) of the Revenue Act of 1938, which requires the inclusion in gross income of "gains or profits and income derived from any source whatever." Certain exclusions from gross income, however, are provided for by section 22 (b). That section reads in part as follows:

(b) EXCLUSIONS FROM GROSS INCOME.—The following items shall not be included in gross income and shall be exempt from taxation under this title:

(1) LIFE INSURANCE.—Amounts received under a life insurance contract paid by reason of the death of the insured, whether in a single sum or otherwise (but if such amounts are held by the insurer under an agreement to pay interest thereon, the interest payments shall be included in gross income) ;

(2) ANNUITIES, ETC.—Amounts received (other than amounts paid by reason of the death of the insured and interest payments on such amounts and other than amounts received as annuities) under a life insurance or endowment contract, but if such amounts (when added to amounts received before the taxable year under such contract) exceed the aggregate premiums or con-

sideration paid (whether or not paid during the taxable year) then the excess shall be included in gross income. Amounts received as an annuity under an annuity or endowment contract shall be included in gross income; except that there shall be excluded from gross income the excess of the amount received in the taxable year over an amount equal to 3 per centum of the aggregate premiums or consideration paid for such annuity (whether or not paid during such year), until the aggregate amount excluded from gross income under this title or prior income tax laws in respect of such annuity equals the aggregate premiums or consideration paid for such annuity. In the case of a transfer for a valuable consideration, by assignment or otherwise, of a life insurance, endowment, or annuity contract, or any interest therein, only the actual value of such consideration and the amount of the premiums and other sums subsequently paid by the transferee shall be exempt from taxation under paragraph (1) or this paragraph.

Under section 22 (b) (2) above the petitioner would be taxable in 1938 on the excess of the maturity value of the policies over the aggregate premiums paid only if she "received" the proceeds in that year. While admittedly petitioner actually received no money payment under the policies in 1938 except the interest and dividends and the $85.64 referred to above under the policy issued by the State Mutual Life Assurance Co., respondent's contention is that she "constructively" received the entire amount of the proceeds of both the policies on the dates of their maturity.

The test for applying the doctrine of constructive receipt is the availability of the income for the taxpayer's use and enjoyment in the taxable year. "The income that is subject to a man's unfettered command and that he is free to enjoy at his own option may be taxed to him as his income, whether he sees fit to enjoy it or not." *Corliss* v. *Bowers*, 281 U. S. 376. See also *Loose* v. *United States*, 74 Fed. (2d) 147, and cases there cited. Taxpayers are not permitted to shift the receipt of income from one year to another and to select the year when the income is to be taxed "by the simple expedient of withholding volition" to accept it when it is made available for their use. *Harry B. Hurd*, 12 B. T. A. 368. See also *Avery* v. *Commissioner*, 292 U. S. 210; *Foley* v. *Commissioner*, 94 Fed. (2d) 958; *Security First National Bank of Los Angeles et al., Executors*, 28 B. T. A. 289; *Alexander Zolotoff*, 41 B. T. A. 991.

An examination of the various Bureau rulings shows that the Commissioner has consistently treated the proceeds of matured life insurance or endowment policies which, in accordance with option settlement agreements, are to be paid out in installments over a period of years, not as taxable to the beneficiaries at the date of maturity under the constructive receipt theory or otherwise, but as taxable in each year as the installment payments are actually received. I. T. 3202, C. B. 1938–2, p. 138; G. C. M. 21666, C. B. 1940–1, p. 116; I. T. 3402, C. B. 1940–2, p. 57; I. T. 3413, C. B. 1940–2, p. 58; G. C. M. 22519, C. B. 1941–1, p. 330.

We consider first the policy issued by the New England Mutual Life Insurance Co. This policy was applied for by petitioner's husband. In making his application he named the petitioner as beneficiary and stated that he did not retain the right to change the beneficiary. The dividends apportioned to the policy were to be applied in acquiring paid-up additional insurance. The policy provided that if both the insured and the petitioner were living at the date of the maturity of the policy the petitioner was thereafter to receive income equal to 3 percent per annum of the value of the policy, which annual payment was to be increased by such share of "surplus interest" as may be apportioned thereto and upon the death of the beneficiary the principal sum and any accrued interest thereon were to be paid to her estate. At the maturity of the policy, February 5, 1938, both the insured and the beneficiary were living and the insured had not made any attempt to change the policy in any way. The petitioner received no payment on the policy in 1938, the first annual payment not being due until one year after the maturity of the policy.

On brief the respondent states:

With regard to the New England policy it is noted that the premium was paid by the petitioner and that the insured, by specific provision, did not reserve the right to change the beneficiary. Accordingly, it should be held that the petitioner was the real owner of the policy and the petitioner should be considered as the real applicant, rather than her husband who signed the application. This being so, it is believed that the terms of the policy should be construed to hold that petitioner has the rights which the insured would otherwise have, including the right to change or revoke any election as to the manner of payment of proceeds. Therefore, it is believed that under the circumstances the petitioner had the right at the date of maturity of this policy to draw down the proceeds thereof.

We do not subscribe to these views. A life insurance policy is a contract between the insurance company and the party who makes application for the policy. The application here was made by petitioner's husband. The laws of the Commonwealth of Massachusetts require the application to be attached to the policy and when so attached the policy and the application together constitute the entire contract between the parties. See ch. 175, secs. 131 and 132–3, General Laws of Massachusetts (Annotated Laws of Massachusetts, vol. 5, pp. 666, 667). Section 132–3, chapter 175, provides in part that:

§ 132. *Life, Annuity, etc., Policies, Approval and Contents.*—No policy of life or endowment insurance and no annuity or pure endowment policy shall be issued or delivered in the commonwealth * * * unless it contains in substance the following:

*       *       *       *       *       *       *

3. A provision that the policy and the application therefor shall constitute the entire contract between the parties, and that no statement made by the

insured or on his behalf shall be used in defence to a claim under the policy unless it is contained in a written application, and a copy of such application is endorsed upon or attached to the policy when issued.

The policy here in question conformed to the requirements of the statute, stating upon its face that "This Policy and the application constitute the entire contract between the parties hereto." The application is signed only by "Robert James Frackelton, Applicant." It states that the amount of the policy is to be "payable at death or after maturity of the endowment period under option four in monthly instalments" to the petitioner, and the question "Do you reserve the right to change the Beneficiary?" is answered "No."

The policy on its face acknowledges payment of the single premium by the petitioner and states that in the event of the maturity of the policy as an endowment the company "in lieu of paying One hundred thousand (100,000) dollars in one sum, will pay annual payments in accordance with the provisions of the Fourth Option of this policy, in equivalent monthly instalments, to said Constance Chandler Frackelton, if living." Option fourth, as set out above, provides only for payments to petitioner for life of interest of 3 percent annually, plus dividends.

We find no provisions anywhere in the contract that permitted the petitioner as beneficiary to receive the principal amount of the policy at the maturity date or at any time during the taxable year 1938. The fact that petitioner paid the premium on the policy gave her no rights outside of those expressly contained in the contract. In *Millard* v. *Brayton*, 177 Mass. 533; 59 N. E. 436, it was said:

* * * The payment of the premiums, whether before or after the death of the wife, did not affect the nature or construction of the contract, did not make him a party to it, nor the policy his property. *Swan* v. *Snow*, 11 Allen, 224; *Baker* v. *Insurance Co.*, 43 N. Y. 283; *Whitehead* v. *Insurance Co.*, 102 N. Y. 151; 6 N. E. 267. * * *

The policy here provides that the "insured" alone should have the right to select the option settlement and that "In case such election is made by the Insured, the Payee shall have no right to assign, alienate or commute any of the instalments so payable, unless the Insured has otherwise directed." The payee (petitioner) was to have the right of election only upon failure of the insured to exercise such right prior to his decease. The fact is that the election was made, presumably by the insured, at the time the policy was issued and was never changed by the insured or any one else. In the absence of any provision to the contrary in the contract, we think that the rights of the petitioner in the proceeds of the policy became fixed upon the maturity of the policy as an endowment. Thereafter, she had no right under the contract to anything more than the interest and dividends.

We do not agree with respondent's contention that the petitioner should be considered the "real applicant" of the policy as well as the "real owner." The application reads: "I, Robert J. Frackelton, of Cleveland, Ohio, hereby apply", etc. It is signed only by "Robert James Frackelton, Applicant." The questions in the application are directed solely to the insured and are all answered by him.

In *Millard* v. *Brayton, supra,* the Supreme Court of Massachusetts had under consideration the question of the respective rights of husband and wife, or persons claiming under them, in an insurance policy on the husband's life. On facts which in some respects resemble those in the instant case but in others were notably different, as pointed out below, the court decided that the policy was a contract between the insurance company and the wife. A distinction, which was emphasized by the court, is that the application there was executed by and signed by both the husband and wife, the wife being referred to therein as the "applicant" and the husband as the "insured." In its opinion the court said:

* * * It appears, therefore, from the application and policy, constituting together the contract, that the wife, having an insurable interest in the life of her husband to the amount of $10,000, wished to insure that interest, and applied to the company for such insurance; that upon such application the policy was issued; that the basis of the contract or the thing insured was the interest of the wife in the life of her husband, as stated in the application, and not the interest of the husband in his own life; that the consideration for the contract was recognized by all parties as coming from the wife; that the promise by the insurance company, although not made in express terms to the wife, was, by fair and reasonable implication and in law, a promise to the wife; that it was a promise to pay the wife, and was made upon certain express conditions, which were to be accepted by the assured, namely, the wife, and by no one else. It follows, as a necessary consequence, that the contract was in law between the company and the wife. It was a contract by which she was insured upon her interest in the life of her husband, and not a contract by which he was insured upon his interest in his own life. In *Whitehead* v. *Insurance Co.,* 102 N. Y. 143, 150, 6 N. E. 267, where each of three policies in the life of the husband recited that the consideration was paid by the wife, and the money was to be paid to her, the court said: "These contracts purport upon their face to be contracts with the wife as the party assured, and not at all with the husband, who stands in the policy as simply the life insured; his conduct and death furnishing the contingencies upon which the liability of the insurer is made to depend. As was tersely expressed in the argument, the contract was about the husband, and not with him." * * *

Further in its opinion the court distinguished *Fuller* v. *Linzee,* 135 Mass. 468; *Bancroft* v. *Russell,* 157 Mass. 47; 31 N. E. 710; and *Haskins* v. *Kendall,* 158 Mass. 224; 33 N. E. 495, on the ground that in those cases the policies were applied for by and procured by the husbands rather than the wives.

In so far as *Millard* v. *Brayton, supra,* may be considered helpful in the determination of our present question, it establishes, contrary

to respondent's contention, that petitioner's husband and not petitioner was the applicant for the policy under consideration and that the policy was a contract between the insurance company and petitioner's husband.

As stated above, we do not think that under any of the provisions of the insurance contract the petitioner had a right to receive the value of the policy at the date of maturity and therefore we are of the opinion that petitioner did not constructively receive the proceeds of the policy in 1938. Since it further appears that petitioner did not actually receive any payments of interest, dividends, or otherwise, under the policy in the taxable year 1938, she is not taxable in that year on any income therefrom.

The policy issued by the State Mutual Life Assurance Co. was somewhat different. That policy was applied for by the petitioner and petitioner paid all the premiums. She and she alone had the right to select the method of settlement. Under the method so elected the company retained the principal amount of the proceeds under an agreement to pay the petitioner during her lifetime interest of 3 percent per annum, plus dividends, and upon her death to pay the principal amount over to her estate. The settlement agreement (option C above) further provides that: "The amount so left with the Company may be withdrawn at any time when an instalment of interest is payable, unless otherwise directed by the insured during his lifetime." There is no evidence that the insured ever directed, even if he had a right to do so, that the proceeds of the policy should not be withdrawn by the petitioner. Thus, it appears that even though petitioner may not have had the right to withdraw the entire amount of the proceeds of the policy on the maturity date, having made her election of the option C settlement five days previously, she did have that right during the taxable year 1938 when the interest payment or payments became due. She received seven monthly interest payments in 1938.

In I. T. 2380 (1927) C. B. VI–2, p. 32, it was held that the proceeds of a matured endowment policy which, under an option settlement agreement, were retained by the company, but which the insured had a right to withdraw at maturity or at any "annuity-paying date", were taxable to the insured at maturity as constructively received by him. The ruling reads in part as follows:

The entire amount of $1,000, called for by the policy, was available to the insured at the maturity date, and, in fact, at any annuity-paying date thereafter. Although under the settlement made it was left with the company, the insured as beneficiary receives a return thereon of 4.8 per cent, and, as before stated, the principal sum may be withdrawn at any annuity-paying date. The settlement made, therefore, amounts to the constructive receipt of the proceeds of the policy at the maturity date and the reinvestment of the same in accord-

ance with the terms of the settlement. The so-called dividend of $22.67 paid to the insured at the maturity date represented merely an adjustment or refund on the last premium paid and, so treated, the net premiums paid are shown to have amounted to $861.94. As this amount of the proceeds is exempt from the income tax under the above-quoted provisions of the statute, the portion of the proceeds which constitutes taxable gain is $138.06, this being the amount by which $1,000 exceeds the net premiums paid. This amount, therefore, represents taxable income for the year 1925, subject to both the normal tax and surtax. * * *

Although the petitioner here was not the insured, she had complete ownership of the policy and the right to select the plan of settlement. The insured had no material rights in the policy.

In I. T. 2635, C. B. XI-2, p. 63, it was held that a beneficiary who had a right to receive interest but not to withdraw the entire proceeds of the policy was taxable only on the interest received. In I. T. 3202, *supra*, it was held that where the proceeds of a matured life insurance policy are left with the company under an agreement to pay "a fixed sum equal or less than the interest and earnings on such proceeds" the contract should not be treated as an annuity contract under section 22 (b) (2) of the Revenue Act of 1936. In G. C. M. 21666, *supra*, an "annuity" was defined as:

* * * a stated sum payable periodically at stated times during life, or a specified number of years, under an obligation to make the payments in consideration of a gross sum paid for such obligation, which gross sum is exhausted in the making of the periodic payments. * * *

The payment of the interest and dividends under the policy here in question does not exhaust the principal amount of the policy and those payments were not annuities.

The important consideration here, in relation to the constructive receipt theory, is that petitioner had the right during the taxable year, if not actually at the date of the maturity of the policy, to withdraw the full amount of the proceeds of the policy, merely upon her request to the company and without any additional payment to the company. It was entirely of her own volition that she permitted the funds to remain in the custody of the insurance company. For practical purposes the result was precisely the same as if she had received actual payment of the proceeds of the policy and had then returned the funds to the company to be held at her pleasure at a guaranteed interest rate of 3 percent, plus whatever additional interest or dividends the company might choose to pay. We know of no reason why under such circumstances the doctrine of constructive receipt should not be held applicable to the proceeds of the policy.

We think that petitioner is taxable in 1938 upon the difference between the maturity value of the policy and the premiums paid thereon, in addition to the interest and dividends that were paid to her during the taxable year.

The final question is whether the amount of $1,167.29 paid to the Cleveland Trust Co. for services as trustee under revocable trusts established by the petitioner is a legal deduction from petitioner's gross income. It is not a legal deduction unless it constitutes an ordinary and necessary expense of carrying on a trade or business. This issue must be decided in favor of the respondent. See *Higgins* v. *Commissioner*, 312 U. S. 212; *City Bank Farmers Trust Co.* v. *Helvering*, 313 U. S. 121; *United States* v. *Pyne*, 313 U. S. 127; *Elliott* v. *Commissioner*, 117 Fed. (2d) 1012.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

MELLOTT dissents on the first point.