ESTATE OF BERTHA MAY HOLMES, ALTON R. HOLMES, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 107185. Promulgated January 28, 1943.

*Alton R. Holmes, Esq.*, for the petitioner.
*William G. Ryman, Esq.*, for the respondent.

#### OPINION.

BLACK, *Judge:* The Commissioner has determined a deficiency in petitioner's income tax for the year 1937 of $441.15. The deficiency is due to the addition of $7,316 dividends to the income reported on petitioner's income tax return. This adjustment is explained in the deficiency notice as follows:

(a) It is held that the sum of $7,316.00 representing dividends derived on the shares of Pioneer Building and Loan Company constituted income to the decedent under the provisions of Section 22 (a) of the Revenue Act of 1936.

Petitioner contests this determination of the Commissioner by an appropriate assignment of error.

The facts have been stipulated and we adopt them as our findings of fact. We state herein such of these facts as we think necessary to an understanding of the issue to be decided. Petitioner's income tax return for the period involved herein was filed with the collector of internal revenue for the fourteenth district of New York, at Albany.

The decedent, Bertha May Holmes, died on April 27, 1939, and following her death letters testamentary were issued to Alton R. Holmes, executor, by the Surrogate's Court for Rensselaer County, New York. He brings this proceeding in his capacity as executor of the estate.

Prior to April 12, 1937, Bertha May Holmes was the owner of 100 installment shares of the Pioneer Building & Loan Association of Troy, New York, sometimes hereinafter referred to as the association. The installment shares of the kind decedent owned are described in section 39 of the bylaws of the association, as follows:

SEC. 39. Shares of the following classes may be issued.

First: Installment shares having a matured value of two hundred and fifty dollars, payable in installments of 25 cents weekly until these installment payments together with the dividends credited thereon shall accumulate their matured value, are withdrawn or forfeited.

The cost of these shares to decedent on April 12, 1937, was $17,598. Prior to such date the association had declared and credited to the 100 shares dividends of $7,316. With reference to the surrender and withdrawal of shares, the bylaws of the association provide, among other things, as follows:

Sec. 45. The accumulation upon both classes of shares may be withdrawn and the shares cancelled after sixty days' written notice of such intention filed with the Secretary at the place of business of the association; but the Directors may waive such notice.

Sec. 46. The withdrawing shareholder shall be paid the amount of the withdrawal value of his shares as determined at the last distribution of profits before the payment is made, together with the dues paid thereon since such distribution, less any lawful fines and other obligations; but the association shall not pay to a withdrawing shareholder any sum in excess of the dues credited to him upon its books, together with such dividends as have been duly apportioned and credited thereon.

On April 12, 1937, Bertha May Holmes made a gift of the 100 shares which she owned in the association, together with the credited accumulated dividends thereon, to her son and daughter as tenants in common, and duly filed a gift tax return for the calendar year 1937, upon which no tax was assessed. The son and daughter completed the payments on the subscription in the amount of $12.50 each or a total of $25 and on the 27th day of April 1937, the date of maturity, they received the contract value of the shares in the amount of $25,025. The son and daughter duly filed income tax returns for the calendar year 1937 and each included therein as income the amount of $3,701 or one-half of the total dividends of $7,402 received upon maturity.

On April 12, 1937, the date of the gift, the "withdrawal value" of the shares owned by Bertha May Holmes was equal to the amount of dues paid in, or $17,598 plus dividends declared and credited to the shares in the amount of $7,316, a total of $24,914. The parties have stipulated that on April 12, 1937, the association could and would have paid the donor the "withdrawal value" of her shares in the association had she made application for withdrawal of the shares at that time.

The first proposition that petitioner lays down is that the amounts credited as dividends to the shares of a building and loan association

are in a true sense dividends similar to the dividends in other corporations in that they are periodical credits from the net earnings, varying with the vicissitudes of the business. They are not fixed in amount nor payable whether the corporation has net earnings or not. In support of this contention, petitioner cites *Aaron Ward & Sons*, 23 B. T. A. 1279; affd., 65 Fed. (2d) 758. The cited case supports petitioner on this point. There we held that the $32,829 received by the taxpayer from a building and loan association which conducted its business in a manner very similar to that of the association which is involved in this proceeding, which amount was in excess of the amounts paid in by the taxpayer on account of its membership fee and stock subscription, was a dividend received from a domestic corporation. Our decision was affirmed by the Third Circuit.

Petitioner's next contention is that decedent had not constructively received the dividends credited to the shares at the time she transferred them to her son and daughter as a gift and, therefore, was not required to include the dividends in her gross income for the year 1937 under the doctrine of constructive receipt. In support of this position, petitioner cites that part of article 42-3 of Regulations 94 which reads:

* * * An amount credited to shareholders of a building and loan association, when such credit passes without restriction to the shareholder, has a taxable status as income for the year of the credit. If the amount of such accumulations does not become available to the shareholder until the maturity of a share, the amount of any share in excess of the aggregate amount paid in by the shareholder is income for the year of the maturity of the share.

In the instant case the association had from year to year credited certain dividends to decedent's shares and these accumulated dividends amounted to $7,316 on April 12, 1937, the date of the gift. These dividends, however, could not be withdrawn by decedent until the date of maturity of the shares, except by the complete surrender of the shares and the cancellation of the investment. Under such circumstances there was no constructive receipt of the income merely because it was within the power of decedent to surrender her 100 shares for withdrawal and receive back her capital investment plus the dividends which had been credited. See *Estate of W. T. Hales*, 40 B. T. A. 1245.

The date of the maturity of decedent's shares was April 27, 1937. Fifteen days prior thereto she gave the shares, plus credited accumulated dividends, to her son and daughter. It is clear that prior to the time of making the gift the decedent, who was on the cash basis, was not in constructive receipt of the accumulated dividends. Was the act of giving these accumulated dividends, by decedent to her son and daughter, coupled with the collection of such dividends by them in the same taxable year, such a realization of the dividends as to make

them taxable to decedent as much as if she had actually or constructively received them? Petitioner contends that such is not the case and cites *Rebekah C. Schoonmaker*, 39 B. T. A. 496; petition for review dismissed. Respondent cites and relies upon the Supreme Court's decision in *Helvering* v. *Horst*, 311 U. S. 112. Undoubtedly the *Schoonmaker* case supports petitioner's position. In view, however, of the Supreme Court's decision in the *Horst* case, we must regard our holding in the *Schoonmaker* case thas "In a gift *inter vivos* there is no realization of income" as having been overruled. In the *Horst* case, in speaking upon the general subject of the realization of income, the Supreme Court said:

Admittedly not all economic gain of the taxpayer is taxable income. From the beginning the revenue laws have been interpreted as defining "realization" of income as the taxable event rather than the acquisition of the right to receive it. And "realization" is not deemed to occur until the income is paid. But the decisions and regulations have consistently recognized that receipt in cash or property is not the only characteristic of realization of income to a taxpayer on the cash receipts basis. Where the taxpayer does not receive payment of income in money or property realization may occur when the last step is taken by which he obtains the fruition of the economic gain which has already accrued to him. [Citing cases.]

The Supreme Court then goes on to hold that the gift by the taxpayer, Horst, to his son of detached negotiable interest coupons shortly before their due date, which were collected by the son in the same taxable year, was such a realization by Horst of the interest as to make it taxable income to him. It is true that in the *Horst* case, Horst remained the owner of the bonds from which the coupons were detached until after the maturity date of the coupons, whereas in the instant case the decedent gave to her son and daughter not only the credited accumulated dividends, but the shares of stock as well. However, it would be difficult to see why, if the gift by the owner of accrued interest represented by negotiable coupons not yet due, which he detached from bonds of which he remained the owner and which were collected by the donee in the same taxable year, represented a realization by the donor of the accrued interest, yet the gift of dividends which had already been credited on stock did not represent realization of income by the owner merely because at the same time that she made the gift of the dividends she also gave away the stock. It is true that in the opinion of the Court in the *Horst* case there are some expressions which may possibly be construed as an indication that the Court, in arriving at its decision, attached some importance to the fact that Horst retained the ownership of the bonds themselves after giving away the coupons. However, we think that a complete reading of the opinion gives the impression that the Court, in arriving at its decision, did so upon the theory that in the making

of the gift, followed by the collection of the interest by the donee in the same year, there was a realization of income by the donor, and no special emphasis was placed on the fact that the donor remained the owner of the bond. The only importance which attaches to the fact that Horst remained the owner of the bond was as to interest which accrued *after* the date of the gift. In other words, as we construe the meaning of the Supreme Court's opinion in the *Horst* case, it is this: that all the fruit of the tree that had grown on the tree at the time of the gift and was plucked by the donee in the same year as the gift was as effectively gathered by the owner of the tree as if he had plucked the fruit himself. Also if he remains the owner of the tree, he also is taxable on the fruit that grows on it, even after the date of the assignment. We do not interpret the *Horst* case, however, as holding that when a gift is made by the owner of not only the fruit but the tree as well, that the former owner is taxable on any of the fruit that grows on the tree after the date of the gift and when he is no longer the owner of the tree. We see no warrant to give the *Horst* case any such interpretation as that.

Therefore, in arriving at our conclusion we wish to make it plain that we are not holding that any of the dividends credited to the stock *after* the date of the gift was income to decedent. The stipulation shows that, after the decedent gave the stock and accumulated dividends to her son and daughter, $86 in dividends were credited by the association to the stock. No attempt is made by the Commissioner to tax this $86 to petitioner and that amount is not in controversy.

We do not think our holding in the instant case is in conflict with our decision in *Annie A. Colby*, 45 B. T. A. 536. In that case we held that a taxpayer on a cash basis is not in receipt of income at the time he gives away his right to receive accrued but unpaid interest which is not collected until a later year. We distinguished the *Colby* case from the *Horst* case on the ground that in the *Horst* case the interest was collected in the same taxable year that the gift was made, whereas in the *Colby* case none of the accrued interest was collected in the taxable year that the gift was made. No such distinction exists in the instant case.

We think also that part of our opinion in *Estate of H. H. Timken*, 47 B. T. A. 494, which deals with (a) and (b) of issue III, is so clearly distinguishable on its facts from the instant case that it is unnecessary to set out those facts, and we simply call attention to the fact that the two cases are distinguishable.

Reviewed by the Court.

*Decision will be entered for respondent.*

LEECH, *J.*, concurs only in the result.

SMITH, *J.*, dissents.