Estate of Eugene Lamb Richards, Florence W. E. Richards, Executrix v. Commissioner. Florence W. E. Richards v. Commissioner.
Estate of Richards v. Commissioner
Docket Nos. 109211, 109212.
United States Tax Court
1943 Tax Ct. Memo LEXIS 96; 2 T.C.M. (CCH) 869; T.C.M. (RIA) 43446; September 30, 1943
*96 Paul Van Anda, Esq., 40 Wall St., New York, N.Y., for the petitioners. Henry C. Clark, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The respondent determined deficiencies in both of the proceedings before us in income tax for the years 1936 and 1937. Docket No. 109212, Estate of Eugene Lamb Richards, involves income tax deficiencies for the calendar year 1936 in the amount of $96,360, and for the calendar year 1937 in the amount of $33,203.80. Docket No. 109211, Florence W. E. Richards, involves income tax deficiencies for the year 1936 in the sum of $11,055.44 and for the year 1937 in the sum of $10,968.05. Respondent has determined that the Estate of Eugene Lamb Richards is taxable in the year 1936 for income in the total sum of $195,000, the total proceeds of a settlement of a judgment. Respondent concedes that if it is held that the estate is taxable in the year 1936 for the above sum, there will be no deficiency against the estate for the year 1937, and no deficiency against Florence W. E. Richards, Docket No. 109211, for either 1936 or 1937. The issue presents the question of the year of the receipt of the proceeds of settlement of *97 a judgment and its underlying cause of action, and the effect upon the taxation of such proceeds of assignments of them after the amount of the settlement had been agreed upon but prior to the actual payment thereof. Petitioners filed their returns for the taxable years with the collector for the third collection district of New York. They kept their books and filed their returns on the cash receipts and disbursements basis. Some of the facts have been stipulated. Findings of Fact Eugene Lamb Richards died on September 17, 1927. The will of decedent was admitted to probate by the Surrogate of the County of Richmond, State of New York on October 7, 1927, and letters testamentary were issued to Florence W. E. Richards as sole executrix, in which capacity she qualified to act and is now acting. For some time prior to June 2, 1927, the decedent had been associated with Fred Y. Presley in the promotion of an investment trust corporation. The activities of decedent and Presley were directed toward obtaining the necessary financing of the proposed corporation. On June 2, 1927, Presley entered into a written agreement with the Guardian Detroit Company under which that company received *98 an option to purchase 100,000 shares of common stock of the new corporation $10at per share on condition that it assign a one-tenth interest in the option to Presley's nominee. On June 9, 1927, Presley, by a written agreement, gave decedent the right to purchase at least 7,000, but not more than 10,000, shares of the common stock of the new corporation at $10 per share. On February 9, 1928, Presley and Guardian Detroit Company, in consideration of the sum of $5,000, received from Florence W. E. Richards, personally and as the sole executrix of the Estate of Eugene Lamb Richards, a release of all claims under the contract of June 9, 1927. The new corporation was formed under the name of National Investors Corporation. Prior to the end of December 1928, it had no assets and had not commenced active business. Its stock was subscribed for and paid by the end of 1928, and in the summer of 1929 it was listed on the New York Curb Exchange. On January 2, 1929, the options were distributed. Under the agreement of June 9, 1927, decedent's estate would have been entitled to purchase 7,333 1/3 shares of National Investors Corporation common stock at $10 per share. During the summer of 1929, *99 these shares sold on the exchange at an average of $166.39 per share. During the same period, there were private sales among "insiders" at $35 per share. On February 11, 1932, Florence W. E. Richards, as executrix, brought action in the Supreme Court of New York, Richmond County, against Presley, National Investors Corporation, and Guardian Detroit Company to set aside the release, and to obtain an accounting for the value of the options converted by the defendants. After a trial on the merits, a judgment was entered for the defendants and the complaint was dismissed. On appeal however, the judgment of the lower court was reversed and judgment was directed in favor of the plaintiff for the relief demanded in the complaint. The appellate court held that the agreement between Presley, Guardian Detroit Company, and decedent was a joint venture and that the defendants converted to their own use, the options on the shares of stock of National Investors Corporation to which the plaintiff was entitled. The matter was then referred to a referee "to take and state the account of the defendants and to report thereon." At the hearing before the referee, the plaintiff contended that it was entitled *100 not to the options themselves (which at that time had little value), but to their market value within a reasonable time after the conversion. Thereafter the referee assessed damages against the defendants for their unlawful conversion of the options in the sum of $1,220.193.33 with interest from January 2, 1929. The referee's report was modified by the Supreme Court of the State of New York, which held that the referee had applied the wrong measure of damages. Pursuant to such modification, a judgment was entered on October 19, 1936, in favor of Florence W. E. Richards, as executrix, against Presley, National Investors Corporation, and Guardian Detroit Company in the sum of $381,324.74. Each of the defendants was jointly and severally liable under the judgment. Appeals from this judgment were taken by all parties within 30 days of the date of entry of the judgment. On October 21, 1936, Jackson A. Dykman, attorney for National Investors Corporation, Timothy N. Pfeiffer, attorney for Presley, and Kenneth M. Spence, attorney for the Estate of Eugene Lamb Richards, met, at the request of Dykman, to consider the possibility of settling the litigation. At that meeting, or shortly thereafter, *101 the attorneys for the defendants, National Investors Corporation and Presley, offered $150,000 in settlement of the litigation. Plaintiff's attorney rejected that offer and told them that the settlement would have to be effected so that "the taxes would not eat up all of the recovery." They were informed by Spence that, in his opinion, the suit and claim could be settled for $200,000. On December 4, 1936, the attorneys met again, and Spence was informed that the defendants were ready to pay $200,000 in settlement of the litigation. Spence indicated that the amount was satisfactory, but that he wanted $100,000 of the settlement to be paid in December 1936, and $100,000 to be paid after January 1, 1937. At this meeting, Spence was informed by Presley's attorney that Presley was desirous of concluding the whole settlement in 1936 and he was ready and able to pay $100,000 as his share of the settlement in that year. On December 7, 1936, Florence W. E. Richards, as executrix, executed an assignment to herself, individually, as sole residuary legatee under her husband's will, of a three-fifths interest in the judgment of October 19, 1936, the cause of action, and the contract of June *102 9, 1927, so far as they affected National Investors Corporation, reserving all rights against the other defendants. Thereafter on the same day, Florence W. E. Richards, individually, assigned one-third of such three-fifths to her daughter, Diana E. R. Lucas, as a gift, and did the same with respect to her son, Eugene Lamb Richards, III. On December 9, 1936, the National Investors Corporation delivered its check in favor of Spence's firm, as attorneys, in the sum of $100,000, and received releases by Florence W. E. Richards, as executrix, by Florence W. E. Richards, individually, and by Eugene Lamb Richards, III, together with a stipulation withdrawing the appeal as to National Investors Corporation. Postponed delivery of the release of Diana E. R. Lucas was agreed to by counsel for National Investors Corporation. The releases reserved all rights as against the other defendants. On December 10, 1936, Spence's firm drew and delivered the following checks, on the basis of the shares after the assignments: Florence W. E. Richards, as execu-
trix
$ 724.65
Florence W. E. Richards, individ-
ually
20,000.00
Diana E. R. Lucas
20,000.00
Eugene Lamb Richards, III.
20,000.00
Spence's firm (representing contin-
gent fee of 33 1/3 percent and dis-
bursements)
37,525.35
Patterson & Ridgeway (representing
accountants' fee)
1,750.00
Total
$100,000.00
*103 On January 5, 1937, Florence W. E. Richards, as executrix, executed an assignment to herself, individually, as sole residuary legatee, of a three-fifths interest in the judgment of October 19, 1936, the cause of action, and the contract of June 9, 1927, so far as they affected Presley and Guardian Detroit Company. Thereafter on the same day, Florence W. E. Richards, individually, assigned one-third of such three-fifths to her daughter, Diana E. R. Lucas, as a gift, and did the same with respect to her daughter-in-law, Katherine B. Richards. Thereafter, and without further negotiations or discussions as to the amount of the settlement, Spence notified Presley's attorney that he was ready to receive Presley's money. On January 12, 1937, Presley's check in the sum of $95,000, payable to Spence's firm, was delivered, and releases by Florence W. E. Richards, as executrix, Florence W. E. Richards, individually, Katherine B. Richards, and Diana E. R. Lucas, together with a stipulation withdrawing the appeal as to Presley and Guardian Detroit Company, were delivered to Presley's attorneys. As part of the settlement, Presley paid the referee's fee of $5,000, making his total payment $100,000. *104 Spence's firm delivered the following checks, on the basis of the shares after the assignments: Florence W. E. Richards, as execu-
trix
$ 4,577.58
Florence W. E. Richards, individually
19,000.00
Katherine B. Richards
19,000.00
Diana E. R. Lucas
19,000.00
Spence's firm (representing contingent
fee of 33 1/3 percent and disburse-
ments)
33,422.42
Total
$95,000.00
For the year 1936, Florence W. E. Richards, as executrix, reported in the income tax return for the estate, income from the 1936 payment in the amount of $40,000, as two-fifths of the $100,000 paid by National Investors Corporation, and claimed as deductions $37,525.35, attorneys' fee and disbursements, and $1,750, accountants' fee. For the year 1937, she reported in the income tax for the estate, income from the 1937 payment in the amount of $38,000, as two-fifths of the $95,000 paid by Presley, and claimed as a deduction $33,422.42, attorneys' fee and disbursements. For the year 1936, Florence W. E. Richards, individually, reported in her individual income tax return, income in the sum of $20,000 as one-fifth of the $100,000 paid by National Investors Corporation. She also reported in a gift tax return *105 for 1936, gifts to her son, Eugene Lamb Richards, III, and her daughter, Diana E. R. Lucas, of a onefifth interest, each, in the judgment of October 19, 1936, and the cause of action, and contract of June 9, 1927, so far as they affected National Investors Corporation, such gifts being reported at a value of $20,000 each. For the year 1937, she reported in her individual income tax return income in the amount of $19,000, as one-fifth of the $95,000 paid by Presley; and in a gift tax return she reported gifts to her daughter, Diana E. R. Lucas, and her daughter-in-law, Katherine B. Richards, of a one-fifth interest, each, in the judgment of October 19, 1936, and the cause of action, and contract of June 9, 1927, insofar as they affected Presley and Guardian Detroit Company, such gifts being reported at a value of $19,000 each. For the year 1936, Diana E. R. Lucas reported in her income tax return, made on the cash basis, income in the sum of $20,000 as one-fifth of the $100,000 paid by National Investors Corporation. For the year 1937, she reported income in the amount of $19,000 as one-fifth of the $95,000 paid by Presley. For the year 1936, Eugene Lamb Richards, III, reported in *106 his income tax return, made jointly with his wife, on the cash basis, income in the sum of $20,000 as onefifth of the $100,000 paid by National Investors Corporation. For the year 1937, Katherine B. Richards reported income in the amount of $19,000 as one-fifth of the $95,000 paid by Presley. The proceeds of the settlement in the total sum of $195,000 were available to the Estate of Eugene Lamb Richards in December 1936, and the estate is taxable upon that amount as income to it in the year 1936. Opinion The first question requires our determination of the year in which the proceeds of the settlement of a judgment and its underlying cause of action should be taxed, and this question involves a determination of whether or not there was constructive receipt of part of the settlement in 1936. Petitioners contend that there were separate settlements in each taxable year and that since they were on the cash basis the proceeds of the settlements were taxable to them in the year of receipt. They stress the fact that no written agreement of settlement was made with Presley in 1936 and the actual payment was made and release was given in 1937. They further maintain that under New York *107 law, no effective settlement could be made orally and that their attorney did not have authority to settle the litigation against Presley in 1936. Of course, National Investors Corporation paid the estate $100,000 in 1936. Respondent's contention is that the entire settlement was consummated in 1936 and that the $95,000 received from Presley in 1937 was constructively received in 1936. Respondent points out that Presley not only was willing and able to make the payment in 1936, but that he actually preferred to complete the transaction in that year. The test for applying the doctrine of constructive receipt is the availability of the income for the taxpayer's use and enjoyment in the taxable year. Constance C. Frackelton, 46 B.T.A. 883. For purposes of taxation, income is received or realized when it is made subject to the will of the taxpayer and can be, except for his own action or inaction, reduced to actual possession. Loose v. United States, 74 Fed. (2d) 147. Taxpayers are not permitted to shift the receipt of income from one year to another and to select the year when the income is to be taxed "by the simple expedient *108 of withholding volition" to accept it when it is made available for their use. Harry B. Hurd, 12 B.T.A. 368. See also, Richard R. Deupree, 1 T.C. 113; Acer Realty Co., 45 B.T.A. 333; affd., 132 Fed. (2d) 512; Alexander Zolotoff, 41 B.T.A. 991; Foley v. Commissioner, 94 Fed. (2d) 958. In this case, the evidence in its entirety warrants the conclusion that all the parties concerned agreed on December 4, 1936, to a settlement of a judgment of the Supreme Court of the State of New York for the sum of $200,000 [1] in order to bring to an end all further litigation by the parties. Although petitioner claims there were separate settlements in each of the taxable years, the record is clear that in the negotiations for settlement, the only amounts discussed were lump sums for settlement of the entire litigation. Prior to December 4, 1936, the defendants' attorneys offered $150,000 in complete settlement of the judgment award as a means of ending further litigation. This offer was refused by petitioner's attorney *109 who stated, however, "that in his opinion the suit and claim could be settled for $200,000." On December 4, 1936, the defendants' attorneys informed petitioner's attorney "that we were ready to pay $200,000 in settlement of the Richards claim." Petioner's attorney then stated "that he wanted the payment to be $100,000 in December, 1936, and $100,000 after the 1st of January." Both of the defendants' attorneys testified that at this meeting petitioner's attorney was informed that Presley was ready to pay his share of the settlement in 1936. Presley's attorney testified that he told petitioner's attorney that "my client preferred to pay the money in December 1936." This was corroborated by Presley himself who also testified that he was able to make the payment in December 1936. Although petitioner's attorney testified that he declined to make or recommend a settlement with Presley in 1936, that he would not recommend the acceptance of Presley's offer until after January 1, 1937, both of the defendants' attorneys testified that there was a definite commitment of settlement in 1936 and that petitioner's attorney merely declined to accept payment by Presley of his share until after January *110 1, 1937. Petitioner also admits that after December 4, 1936, there were no further negotiations with respect to the amount of the settlement. On December 9, 1936, petitioner's attorney received $100,000 from the National Investors Corporation. Nothing further was done until January 9, 1937, when Presley's attorney was informed that petitioner would then accept his money and deliver the releases. Petitioner's argument that her attorney was without authority to settle with Presley in 1936 is inconsistent with the realities of the situation. At the date of the settlement, Florence W. E. Richards was of an advanced age and in poor financial condition. Her attorney had taken her case on a contingent basis and had spent several thousand dollars of his own money in disbursements. During the entire litigation, which was arduous and prolonged, she had *111 relied implicitly on her attorney. Tax cases deal with realities and not with fine spun legalistic distinctions. Moore v. Commissioner, 124 Fed. (2d) 991. Under the circumstances, it cannot be held otherwise than that the recommendation of the attorney to settle the litigation was tantamount to acceptance by Florence W. E. Richards. Petitioner's further argument that an oral settlement in 1936 was ineffective under New York law is also without merit. Whatever validity that argument may have between the parties to the settlement, it cannot affect respondent in this proceeding, a tax proceeding. There was a meeting of minds in 1936 with respect to settlement and definite commitments were made in that year. The fact that petitioner required payment of part of the settlement proceeds in 1937 for the purpose of avoiding a larger tax in 1936 cannot, under these facts, preclude respondent from treating the entire settlement as consummated in 1936. To hold otherwise would be to exalt artifice above reality. Gregory v. Helvering, 293 U.S. 465. Since the terms of settlement were agreed upon in 1936, and the proceeds were available *112 to the estate in that year, the sum of $95,000 received from Presley in 1937 was constructively received by the estate in 1936. The next question is whether the Estate of Eugene Lamb Richards is taxable upon the entire proceeds of the settlement, to wit, $195,000. Petitioners claim that the $195,000 is taxable as follows: Two-fifths is taxable to the estate, and Florence W. E. Richards and her two children are each taxable upon one-fifth of the settlement. This contention is founded upon the theory that Florence W. E. Richards made assignments of an interest in property rather than of income. Petitioners contend that Richards died a member of a joint venture, entitled to specified options on comomn stock of National Investors Corporation; that after the options were misappropriated from his estate, they appreciated in value; and that the subject matter of the assignments in December 1936 and thereafter by Florence W. E. Richards were in fact assignments of an interest in the contract between Richards and Presley and in the underlying cause of action and judgment, all of which, it is alleged, "were property capable of assignments so that gain from subsequent sale or realization would *113 be taxable to the assignees." Respondent contends that the settlement was a compromise of the damage sustained by Richards, deceased, from the conversion of the options to which he was entitled, and that the court's award of damages constituted income, so that when such income was assigned it was taxable to the assignor rather than to the assignees. Under the facts of this case, his contentions must be sustained. The parties agree that the full amount of the proceeds of the settlement of the judgment are taxable income, and that had Richards lived, the sum of $195,000 would have been includible in his gross income under section 22 (a) of the Revenue Act of 1936 as "gains or profits * * * derived from any source whatever." The controversey here presents the question whether this amount can be split up and divided among members of a family for the purpose of reducing income taxes. The fact is that the judgment which was entered in the proceeding in the state court was not for the return of the converted options. At the time of the litigation the options themselves were of little value. The defendants had offered to return them to the estate, the plaintiff, which refused the offer. *114 The judgment as entered was a judgment for money representing the damages sustained by plaintiff from the defendants' unlawful conversion. The measure of damages was the value of the options within a reasonable time after the conversion. Although the estate originally may have had a property right in the contract of Richards and in the cause of action, that right had been reduced to a judgment for money by the judgment of the Supreme Court. The amount received from the settlement of that judgment was income under section 22 (a) of the Revenue Act of 1936. United States v. Safety Car Heating and Lighting Co., 297 U.S. 88; Swastika Oil and Gas Co. v. Commissioner, 123 Fed. (2d) 382. That income is taxable to the Estate of Eugene Lamb Richards because Richards created the right to receive it. In Helvering v. Horst, 311 U.S. 112, the Court said: The power to dispose of income is the equivalent of ownership of it. The exercise of that power to procure the payment of income to another is the enjoyment and hence the realization of the income by him who exercises it. * * * * * The dominant *115 purpose of the revenue laws is the taxation of income to those who earn or otherwise create the right to receive it and enjoy the benefit of it when paid. * * * In Harrison v. Schaffner, 312 U.S. 579, in referring to sections 22 (a), 161 (a), and 162 (b), the Court said: * * * In construing these and like provisions in other revenue acts we have uniformly held that they are not so much concerned with the refinements of title as with the actual command over the income which is taxed and the actual benefit for which the tax is paid. See Corliss v. Bowers, 281 U.S. 376, 50 S. Ct. 336, 74 L. Ed. 916; Lucas v. Earl, supra; Helvering v. Horst, supra; Helvering v. Eubank, supra; Helvering v. Clifford, supra. It was for that reason that in each of those cases it was held that one vested with the right to receive income did not escape the tax by any kind of anticipatory arrangement, however skillfully devised, by which he procures payment of it to another, since, by the exercise of his power to command the income, he enjoys the benefit of the income on which the tax *116 is laid. The contract to which petitioner, Florence W. E. Richards, refers as the source of her claim that she assigned interests in property, was entered into by Richards in June 1927. The action over the contract was commenced in February 1932, and a judgment entered in favor of the estate on October 19, 1936. During all these years, no attempt was made to assign any rights in either the contract or the cause of action. On December 4, 1936, commitments of settlement of the judgment award were made. On December 7, 1936, Florence W. E. Richards executed some of her assignments, and on December 9, 1936, $100,000 was paid pursuant to the agreed settlement of the judgment. There can be little doubt that the assignment by Florence W. E. Richards were simply anticipatory arrangements for the deflection of income for the purpose of reducing income taxes. See Griffiths v. Commissioner, 308 U.S. 355; Groves v. Commissioner, 99 Fed. (2d) 179; McInerney v. Commissioner, 82 Fed. (2d) 665; Guaranty Trust Co. of New York, et al., Executors, 35 B.T.A. 916; affd., 98 Fed. (2d) 62; *117 Morsman v. Commissioner, 90 Fed. (2d) 18; certiorari denied, 302 U.S. 701. Under these circumstances, the assignments by the executrix to herself, individually, and the subsequent assignments to her children were entirely ineffective to shift the tax from the owner of the right to receive income, the Estate of Eugene Lamb Richards. Respondent concedes that the estate is entitled to a deduction under section 121 of the Revenue Act of 1942 in the sum of $72,697.77, representing the total sum paid to attorneys and accountants, which he originally disallowed. Accordingly, In Estate of Eugene Lamb Richards, Docket No. 109212, decision will be entered under Rule 50. In Florence W. E. Richards, Docket No. 109211, decision of no deficiencies will be entered. Footnotes
1. Although the settlement was for $200,000, the estate received only $195,000. As the facts indicate, Presley, as part of the settlement, paid the referee's fee of $5,000 and the balance of the $100,000 due from him was paid to the estate. Respondent concedes that the amount of taxable income received by the estate was $195,000, only.↩