## S. M. FRIEDMAN AND ESTHER G. FRIEDMAN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2758–62.   Filed December 31, 1963.

---

*Philip J. Wolf* and *Jerry M. Hamovit*, for the petitioners.
*Buckley D. Sowards*, for the respondent.

OPINION

Scott, *Judge:* Respondent determined deficiencies in petitioners' income tax for the calendar years 1957 and 1958 in the respective amounts of $4,912.44 and $16,366.23.

The issue for decision is whether petitioners realized taxable income in the amounts by which the values of endowment insurance policies transferred by S. M. Friedman to charitable organizations exceeded his bases in such policies.

All of the facts have been stipulated and are found accordingly.

Petitioners, husband and wife residing in Shaker Heights, Ohio, filed joint Federal income tax returns for the calendar years 1957 and 1958 on the cash basis of accounting with the district director of internal revenue, Cleveland, Ohio.

S. M. Friedman (hereinafter referred to as petitioner) in 1957 was the owner of an endowment insurance policy issued to him on October 29, 1938, by the Mutual Benefit Life Insurance Co. (hereinafter referred to as the insurance company). The policy provided that on October 29, 1958, the insurance company would pay $100,000, exclusive of accrued dividends, to petitioner, or if he should die before that date, that sum would be paid to his designated beneficiaries on proof of his death.

Petitioner's adjusted basis for this endowment policy at all times here involved was $60,000.

On November 13, 1957, petitioner caused the insurance company to divide this policy into four separate policies in the respective face amounts of $30,000, $20,000, $25,000, and $25,000. On Sep-

tember 8, 1958, petitioner caused the $30,000 policy to be divided into two separate policies in the face amounts of $20,000 and $10,000. Through these two divisions the $100,000 policy was divided as follows:

| Policy No. | Maturity value | Adjusted basis |
| --- | --- | --- |
| 1,821,832 | $20,000 | $12,000 |
| 1,821,832¼ | 20,000 | 12,000 |
| 1,821,832½ | 25,000 | 15,000 |
| 1,821,832¾ | 25,000 | 15,000 |
| 1,821,832⅝ | 10,000 | 6,000 |

All of these policies had maturity dates of October 29, 1958. The policies carried a table of loan or cash surrender value and provided, "All calculations of Reserves and Net Single Premiums will be on the basis of the American Experience Mortality with Interest at Three Per Centum yearly, and according to the attained age of the Insured." The policies contained provisions with respect to dividends, granting options for withdrawal of such dividends, use of such dividends to reduce premium payments, and accumulation of dividends.

On December 26, 1957, petitioner delivered policy No. 1,821,832¼ in the face amount of $20,000 to the Temple (Tifereth Israel Society) of Cleveland, Ohio, together with duly executed copies of an absolute assignment and transfer of policy and request for change of beneficiary. This policy was delivered to the Temple with a letter addressed to the Temple which stated in part as follows:

The said enclosed policy will mature on October 29, 1958. Pursuant to our agreement I am selling this policy to The Temple for the sum of $11,975 and I am hereby making a gift of $1,000 of the excess value to Mt. Sinai Hospital and the balance of the excess value to The Temple.

On December 26, 1957, the Temple accepted the policy with the assignments and change of beneficiary and paid petitioner $11,975. On or about December 31, 1957, the Temple delivered the policy to the insurance company for transfer into the Temple's name and designation of it as sole beneficiary on the policy, which transfer and designation was effected by the insurance company on or before December 31, 1957. On or about November 6, 1958, the Temple paid $1,000 to Mt. Sinai Hospital. The cash surrender value of policy No. 1,821,-832¼ as of December 26, 1957, was $970.87 per $1,000 of insurance, or $19,417.

Petitioners, on their income tax return for the calendar year 1957, claimed deductions for charitable contributions in the amount of $8,000 based upon the transfer of policy No. 1,821,832¼ to the Temple.

On September 11, 1958, petitioner addressed a letter to Mt. Sinai Hospital setting forth an agreement reached between his representa-

tives and representatives ot the hospital that on or before October 1, 1958, he would cause to be assigned to Mt. Sinai Hospital a life insurance endowment policy on his life of a face value of $25,000 which would mature on October 29, 1958. The letter further stated:

Under the terms of our agreement, I am selling this policy to Mt. Sinai Hospital for the sum of $15,000.00 and I am hereby making a gift of the excess value to Mt. Sinai Hospital and Case Institute of Technology. It is agreed that upon receipt of the said policy properly assigned to Mt. Sinai Hospital (1) Mt. Sinai Hospital will issue to me its check in the amount of $15,000.00 as payment of the above agreed price, (2) Mt. Sinai Hospital will issue its check in the amount of $1,000.00 payable to the order of Case Institute of Technology representing the gift I am making to the Institute and (3) the balance represents my gift to Mt. Sinai Hospital and is to be applied to my pledge.

This agreement was approved by the director of Mt. Sinai Hospital on September 11, 1958. Pursuant to this letter agreement petitioner, on October 13, 1958, caused policy No. 1,821,832¾, having a maturity value of $25,000 plus dividends accrued thereon in the amount of $659.63, together with a duly executed copy of an absolute assignment and transfer and request for change of beneficiary, designating the hospital as owner of all rights in and as sole beneficiary of the policy, to be delivered to the hospital. Mt. Sinai Hospital accepted this policy and related documents on that date. On October 16, 1958, Mt. Sinai Hospital delivered the policy and related documents to the insurance company for transfer into its name and designation of it as sole beneficiary of the policy, and paid petitioner $15,000 and Case Institute of Technology $1,000. The policy transfer was effected by the insurance company immediately upon receipt of the policy and related documents.

Petitioners, on their income tax return for the calendar year 1958, claimed deductions for charitable contributions in the amount of $10,659.63 based upon the transfer of policy No. 1,821,832¾ to Mt. Sinai Hospital, such amount representing the difference between the amount petitioner received in cash from Mt. Sinai Hospital upon the delivery to it of policy No. 1,821,832¾ and the maturity value plus dividends on the policy.

On August 8, 1958, petitioner addressed a letter to the Jewish Community Federation of Cleveland which stated that in accordance with the agreement reached between his representatives and the Jewish Community Federation, he would on or about October 1, 1958, cause two life insurance endowment policies issued upon his life having an aggregate face value of $35,000 and both maturing on October 29, 1958, to be assigned to the Jewish Community Federation. This letter further stated:

Pursuant to our agreement I am selling these policies to The Jewish Community Federation of Cleveland for the sum of $21,000.00, and I am hereby making a gift of the excess value to The Jewish Community Federation of

Cleveland. Please apply said gift to my pledge to the Federation. Upon receipt of the policies, The Jewish Community Federation of Cleveland is to issue to me its check in the amount of $21,000.00 as payment of the above agreed price.

Pursuant to the agreements set forth in this letter, petitioner on October 14, 1958, delivered policies Nos. 1,821,832¾ and 1,821,8324⅘ having maturity values of $25,000 and $10,000, respectively, or a total maturity value of $35,000 plus accrued dividends of $923.43 to the Jewish Community Federation of Cleveland, together with executed copies of an absolute assignment and transfer and request for change of beneficiary for each of the policies, designating the Jewish Community Federation of Cleveland as the owner of all rights in and sole beneficiary of the policies. The Jewish Community Federation accepted the policies and related documents, and on or about October 15, 1958, delivered the policies and related documents to the insurance company for transfer into its name and designation of it as sole beneficiary of the policies, and paid petitioner $21,000. On or about October 15, 1958, the insurance company effected the transfer of the policies to the Jewish Community Federation of Cleveland.

Petitioners, on their income tax return for the calendar year 1958, claimed deductions for charitable contributions in the amount of $14,923.43 based upon the transfer of policies Nos. 1,821,832¾ and 1,821,8324⅘, this amount representing the difference in the amounts received in cash from the Jewish Community Federation and the maturity values of the policies plus dividends.

The pledges which were referred to in the agreements by petitioner with Mt. Sinai Hospital and the Jewish Community Federation were oral and not written pledges.

The Temple (Tifereth Israel Society), Mt. Sinai Hospital of Cleveland, and the Jewish Community Federation of Cleveland are, and during the years 1957 and 1958 were, charitable organizations within the meaning of section 170 of the Internal Revenue Code of 1954. Upon maturity of each of the four policies which were transferred to the various charities as hereinbefore set forth, the insurance company paid the proceeds thereof to the respective owners, the three charitable organizations.

Petitioner did not receive any of the proceeds of these four policies. After the date of the transfer of each of the policies to the charitable organization to which it was transferred, petitioner neither exercised nor possessed any incidence of ownership with respect to these policies or any of them.

The cash payments received from the various charitable organizations upon the delivery by petitioner of the policy or policies to them did not in any instance exceed petitioner's pro rata adjusted

basis in such policy or policies. Petitioner reported no gain or loss on the sale of the policies in either 1957 or 1958.

Respondent in his notice of deficiency increased petitioners' reported taxable income for the calendar year 1957 by an amount of $7,975 which he explained represented income realized from the endowment policy which was to mature on October 29, 1958, which petitioner transferred to the Temple. The $7,975 represented the difference in the basis of $12,000 of the policy transferred in 1957 and the maturity value of $20,000 ($8,000), minus the $25 less than basis which petitioner received for the policy.

Respondent increased petitioners' reported income for the year 1958 by an amount of $25,583.06 which he explained as representing income realized from the three endowment policies which matured on October 29, 1958, which petitioner transferred to Mt. Sinai Hospital and the Jewish Community Federation.

Petitioner takes the position that he made gifts to charitable organizations in 1957 and 1958 of appreciated property which did not result in his receiving income in the amount of the difference in the fair market value and basis of such property. *Apt* v. *Birmingham*, 89 F. Supp. 361 (N.D. Iowa 1950); *Winton* v. *Kelm*, 122 F. Supp. 649 (D. Minn. 1954). Petitioner contends that this has been the uniform rule whether the gain from the property which would have resulted had there been a sale or exchange of the property is capital gain or ordinary income, *White* v. *Broderick*, 104 F. Supp. 213 (D. Kans. 1952); *Campbell* v. *Prothro*, 209 F. 2d 331 (C.A. 5, 1954); and *Stuart A. Rogers*, 38 T.C. 785 (1962), even though the property is sold to the extent of the donor's basis therein. *Elizabeth H. Potter*, 38 T.C. 951 (1962). Petitioner points out that the rule is the same whether the gift is to a charitable beneficiary, or to a member of the donor's family. *Elsie SoRelle*, 22 T.C. 459 (1954), and *Lester A. Nordan*, 22 T.C. 1132 (1954).

Respondent takes the position that petitioner has in effect made gifts of anticipated income. Respondent points to the fact that (1) petitioner's gifts consisted of endowment insurance policies with cash surrender values at the date of the gifts in excess of petitioner's basis therein; (2) at maturity of the policies the excess of their maturity value over petitioner's bases therein would have constituted ordinary income to petitioner; and (3) petitioner by making a charitable contribution of the endowment policies shortly before their maturity date has derived the same economic benefit that he would have enjoyed had he surrendered the policies, received payment thereon, and given the money to the various charitable organizations. *Helvering* v. *Horst*, 311 U.S. 112 (1940); *Commissioner* v. *P. G. Lake, Inc.*, 356

U.S. 260 (1958) ; *Ida S. Austin*, 6 T.C. 594, affd. 161 F. 2d 666 (C.A. 6, 1947) ; and *Estate of Bertha May Holmes*, 1 T.C. 508 (1943).

With respect to the year 1957 respondent recognizes that it has been held that a gift of anticipated income which is not received actually or constructively by either the donor or donee in the year of gift but is received in a subsequent year is not taxable to a cash basis donor in the year of the gift.  *Annie A. Colby*, 45 B.T.A. 536 (1941) ; *Estate of H. H. Timken*, 47 B.T.A. 494, affd. 141 F. 2d 625 (C.A. 6, 1944) ; and *Ida S. Austin*, *supra*.  Respondent, however, attempts to distinguish the instant case from the cases holding that a cash basis taxpayer does not receive income in the year of gift of items of income earned but not paid actually or constructively to either the donor or donee until a subsequent year on the basis that in the instant case there at no time existed any doubt as to the collectibility of the income.

The law with respect to gifts of property is, as petitioner points out, that a gift of appreciated property does not result in income to the donor irrespective of whether the gain from a sale of the property would result in capital gain or ordinary income even when the property is partially the subject of sale and partially of gift.  *Elizabeth H. Potter*, *supra*, and *Stuart A. Rogers*, *supra*, and cases therein cited. The law is equally clear that when a cash basis taxpayer makes a gift of a right to receive earned but unpaid income in the year in which the amount is paid to the donee such income is taxable to the donor even though the right to such income might for some purposes be considered as property.  *Helvering* v. *Horst*, *supra*.  Cf. *Hort* v. *Commissioner*, 313 U.S. 28 (1941).  Where the gift is of only the income produced by the basic property as in the case of the interest coupon given in *Helvering* v. *Horst*, *supra*, a clear situation exists of a gift only of the income.  Where both the basic property producing the income and the earned income thereon are given, it is often more difficult to distinguish between situations involving merely a gift of appreciated property and a gift of basic property and earned income. In *Estate of Bertha May Holmes*, *supra*, we stated, at page 511, that—

it would be difficult to see why, if the gift by the owner of accrued interest represented by negotiable coupons not yet due, which he detached from bonds of which he remained the owner and which were collected by the donee in the same taxable year, represented a realization by the donor of the accrued interest, yet the gift of dividends which had already been credited on the stock did not represent realization of income by the owner merely because at the same time that she made the gift of the dividends she also gave away the stock. * * *

In *Smith's Estate* v. *Commissioner*, 292 F. 2d 478 (C.A. 3, 1961), affirming 34 T.C. 842 (1959), the court quoted with approval the above-quoted portion of the Opinion in *Bertha May Holmes*, *supra*, following this statement:

Seeking to avoid the impact of the *Horst* decision the petitioners point out that there the interest coupons alone were given away. But in both cases the right to the earnings in question was a vested right to receive a determined amount of fully earned gain. Such a right is distinct from the stock ownership, though derived from it. In the horticultural metaphor which has become familiar in cases of this type, "the fruit had ripened" before the gift. In these circumstances, we see no reason why the rule of the *Horst* case should not be as fully applicable to a gift of the fruit with the tree as to a gift of the fruit alone. \* \* \*

*Smith's Estate* v. *Commissioner, supra,* involved a gift of shares of stock by parents to their children after a declaration of a dividend but prior to the date on which the dividend was to be paid.

There is no question that upon maturity on October 29, 1958, of the insurance policies here involved, the excess of the maturity value over petitioner's bases in the policies would constitute income to petitioner. *Constance C. Frackelton,* 46 B.T.A. 883, 894 (1942) ; *Bolling Jones, Jr.,* 39 T.C. 404 (1962), and sec. 72(e), I.R.C. 1954. The question is whether the amount of such excess constituted income earned but not yet paid at the date of the gifts. Petitioner contends that it did not. He points out that the income had not accrued in the legal sense of accrual of income, since to have obtained the cash surrender value of the policies prior to their maturity date would have necessitated his parting with valuable rights in the policies including the right upon his death to have the amount paid as insurance and thus received without constituting taxable income to the beneficiary. Cf. *Theodore H. Cohen,* 39 T.C. 1055, 1063 (1963). We do not consider the question of whether income had accrued at the date of the gift so as to have been includable in income by an accrual basis taxpayer to be determinative of the issue here. In *Commissioner* v. *P. G. Lake, Inc., supra,* an assignment by sale of income to accrue at a later date but during the term of the assignment was considered as an assignment of a right to receive future income and therefore taxable as ordinary income and not capital gain. The theory of the cases dealing with anticipatory assignment of income by gift has not been concerned with when the income was accrued in a legal sense of accrual but rather with whether the income had been earned so that the right to the payment at a future date existed when the gift was made. See *Estate of W. G. Farrier,* 15 T.C. 277, 283–284 (1950). It is the giving away of this right to income in advance of payments which has been held not to change the incidence of the tax. Cf. *Commissioner* v. *P. G. Lake, Inc., supra.*

Petitioner's argument here is similar to that of the taxpayer in *Estate of Bertha May Holmes, supra,* where the gift consisted of stock in a building and loan association with earned dividends thereon. The dividends credited to the shareholders could not be drawn out until

maturity date of the shares except by complete surrender of the shares and the gift was made 15 days prior to the maturity date of the shares. We recognized that the donor in the case of *Estate of Bertha May Holmes* was not in constructive receipt of the dividends prior to the maturity date of the shares but did not consider this fact to distinguish that case from *Helvering* v. *Horst, supra*. In *Helvering* v. *Horst*, the interest was not constructively received by the donor of the interest coupons prior to the payment date of such coupons. It was the very fact of payment in the same year of the gift that caused the income to result in the same economic benefit to the donor in that year as if he had received the payment himself. By the same reasoning, petitioner in the instant case received the economic benefit from the excess of the maturity value of the insurance policies over his bases therein on the maturity date of such policies when the proceeds were paid to the charities he designated to receive them. It may be that had petitioner died between the date of transfer of the policies to the charities and the maturity date of the policies a different result would be reached. This did not happen and so we do not decide what the tax results of such an event would be. We do decide that petitioner, who was living at the maturity date of the policies, on that date received the economic benefit of the income and therefore under *Helvering* v. *Horst, supra*, he is taxable on this income. We therefore sustain respondent in his inclusion in petitioner's income for 1958 of the $25,583.06 representing the difference in the maturity value, plus dividends accrued, and petitioner's bases in policies No. 1,821,832¾, No. 1,821,832¾, and No. 1,821,832⅘.

The year 1957 presents a different question. No amount was paid to petitioner's donees on the policy assigned to the Temple in that year and the policy did not mature in that year. This presents a situation squarely within our holdings in *Annie A. Colby*, 45 B.T.A. 536 (1941), and *Ida S. Austin*, 6 T.C. 594 (1946), affd. 161 F. 2d 666 (C.A. 6, 1947). Neither of these cases turned on the lack of likelihood of payment to the donee. The determining factor was that the income was not received by the donee until the year following the year of the gift. A cash basis taxpayer is not taxable on income until he receives it actually or constructively. The making of a gift of his right to receive income does not cause such income to be received until the donor derives the economic benefit of having the income received by his donee. We sustain petitioner in his contention that respondent erred in increasing his income in 1957 by $7,975 because of his transfer in that year of policy No. 1,821,832¼ to the Temple.

*Decision will be entered under Rule 50.*