THEODORE H. COHEN AND OLIVE B. COHEN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 89118.   Filed March 27, 1963.

*Richard Katcher, Esq.*, for the petitioners.
*Buckley D. Sowards, Esq.*, for the respondent.

WITHEY, *Judge:* Respondent has determined a deficiency in the income tax of petitioners for the year 1958 in the amount of $23,100.99. Petitioner claims an overpayment in his income tax for 1958.

The issues presented for our decision are (1) whether gain realized by petitioner Theodore H. Cohen upon the transfer of certain life insurance endowment policies is taxable as ordinary income or long-term capital gain; and (2) if such gain was taxable as ordinary income, whether that part of the gain represented by the annual increments in the cash surrender value and interest on deposited dividends was taxable to petitioner during each of the years in which he owned the policies and not so taxable in the year in question.

FINDINGS OF FACT.

The stipulation of facts filed by the parties is found as fact and incorporated herein.

Theodore H. Cohen (hereinafter referred to as petitioner) and Olive B. Cohen are husband and wife residing in Beachwood Village, Ohio.   They filed a joint income tax return for the taxable year 1958 with the district director of internal revenue at Cleveland, Ohio, reporting such income on the cash basis.

During 1958, petitioner was part owner and president of the Associated Steel Co. located in Cleveland, Ohio.   He was not during that time, nor has he ever been, in the business of buying and selling life insurance policies.

On or about September 15, 1941, petitioner purchased three single premium 20-year endowment life insurance policies (sometimes hereinafter referred to as the policies) on his life for stated amounts as follows:

| Policy | Single Premium Paid | Face Amount |
|---|---|---|
| Mutual Benefit Life Insurance Co. No. 2,090,810 | $32,774 | $50,000 |
| John Hancock Mutual Life Insurance Co. No. 3,526,502 | 26,844 | 40,000 |
| New England Mutual Life Insurance Co. No. 1,135,533 | 7,075 | 10,000 |
| Total | 66,693 | 100,000 |

The Mutual Benefit life insurance policy contained, among other things, the following clauses:

*Reserves and Net Single Premiums*

Reserves will be computed according to the American Experience Table of Mortality with Interest at three per centum yearly. Net Single Premiums will be computed on the same basis, according to the age (nearest birthday) of the Insured at the time of their application under the Dividend provisions hereof.

### SURRENDER VALUES

At the end of any Policy year during the whole of which this Policy shall have been in force, this Policy may be surrendered to the Company at its office in Newark, New Jersey, for its Cash Surrender Value.

The Cash Surrender Value will be equal to any excess of the sum of (a) the entire Reserve on this Policy and on any Dividend Additions and (b) any dividends standing to the credit of this Policy, over the sum of (a) any indebtedness to the Company hereon and (b) one per centum of the amount insured by this Policy; which one per centum will be diminished proportionally after the first Policy year so as to be eliminated at the end of the third Policy year.

It further provided with respect to dividends the following:

At the end of each Policy year, while this Policy is in force, this Policy will be credited with such Dividends, including the portion of the divisible surplus accruing thereon, as may be apportioned by the Directors. Dividends thus credited, except as herein provided may be applied upon the Accumulation, Addition or Accelerative Endowment plan. These options will be available each year, except that Dividends cannot be applied upon the Accelerative Endowment plan while there is outstanding any credit arising from the application of Dividends upon either of the other two plans. If no such option be selected, Dividends will be paid in cash.

Under the Accumulation plan, Dividends are retained by the Company and accumulated at Interest, compounded yearly at the rate of three per centum or at such higher rate as may be determined annually by the Directors. The Accumulation may be withdrawn within thirty-one days after the end of any Policy year during the whole of which this Policy shall have been in force; or, if not so withdrawn, will be applied automatically to the settlement of any Interest which is in arrears for thirty-one days, in so far as sufficient therefor. If not so withdrawn or applied, it will be included in the Cash Surrender Value hereof or in any settlement made on the maturity of this Policy.

The John Hancock Mutual life insurance policy provided with respect to cash surrender rights and dividends the following:

CASH SURRENDER VALUE.—At any time after this policy has been in force for one year from its date of issue, it may be surrendered and its value, computed to the nearest dollar per thousand dollars of insurance, paid in cash; but the Company may defer the payment of the cash value for not exceeding ninety days from the date of the application therefor.

The cash surrender value will be the reserve on the policy, less a decreasing surrender charge having a maximum at the end of the first policy year of not more than three and one-half per cent of the face amount of the policy, and for the fifth and subsequent policy years the surrender value will be the policy reserve. Such surrender value will be increased by the reserve on any additions to the policy and decreased by any indebtedness to the Company hereon including any accrued interest.

The legal reserve under this policy is computed by the net level premium method upon the American Experience Table of Mortality, with interest at three per cent per annum.

Values not stated in the table herein will be furnished on request.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

Annual Surplus Distribution.—The proportion of divisible surplus accruing upon this policy shall be ascertained annually. Beginning at the end of the first policy year, and on each anniversary thereafter, such surplus as shall have been apportioned by the Company to this policy, shall be available under any one of the following options.

Distribution Options.—Such surplus distributions may be—(a) taken in cash, (c) [sic] left on deposit with the Company to accumulate with interest at the rate of not less than two and one-half per cent per annum, payable with proceeds of the policy or withdrawable in cash on demand, or (d) [sic] applied to purchase nonforfeitable participating paid-up additions. In the absence of an election in writing of one of the above options, in a form satisfactory to the Company, filed at its Home Office prior to any anniversary of the policy, the distribution for that anniversary shall be held on deposit, as provided in option (c).

The New England Mutual life insurance policy provided, among other things, the following:

Non-Forfeiture Provision

The reserve on this Policy is computed by the full level premium method on the American Experience Table of Mortality and three per cent interest. The values are equivalent to the full reserve. After the single premium has been paid and prior to maturity, the following non-forfeiture option will be available:

Cash Value. The net cash value, which shall be the value of the Policy and of any additions and accumulated surplus, less any indebtedness to the Company on or secured by this Policy, payable on surrender of the Policy. Cash values will be available within thirty-one days after the end of a policy year, or with the consent of the Company at other times. The Company may defer payment of any cash value for not more than six months from date of application therefor, or for any shorter period prescribed by law.

The policy also provided for the following values at the end of each year stated:

| After policy has been in force for number of policy years indicated | For each $1,000 of face amount; cash or loan value |
| --- | --- |
| 1 | $623.23 |
| 2 | 637.58 |
| 3 | 652.35 |
| 4 | 667.57 |
| 5 | 683.23 |
| 6 | 699.36 |
| 7 | 715.96 |
| 8 | 733.08 |
| 9 | 750.74 |
| 10 | 768.97 |
| 11 | 787.82 |
| 12 | 807.35 |
| 13 | 827.61 |
| 14 | 848.70 |
| 15 | 870.71 |
| 16 | 893.76 |
| 17 | 918.01 |
| 18 | 943.64 |
| 19 | 970.87 |
| 20 | 1,000.00 |

With respect to the payment of dividends the policy provided:

Dividends

At the end of the first policy year, and annually thereafter while in force prior to maturity, this Policy shall be credited with such share of surplus as may be apportioned by the Company. Each share of surplus, or dividend, at the option of the Owner, shall be (A) payable in cash; or (C) [sic] used to purchase a participating paid-up addition, which may be surrendered for a cash value not less than the dividend; or (D) [sic] left with the Company to accumulate, with interest at not less than two and one-half percent per annum, and payable at maturity or on demand. Any election in the application or by subsequent request shall be effective until another election is made, but if no election is in effect, the share of surplus for any year will be held by the Company at interest, as provided in D. If this Policy becomes a claim by death a post-mortem share of surplus shall be paid.

Petitioner elected to leave all amounts described as "dividends" which were payable under the policies and credited to his account on deposit with the insurance companies subject to his demand. The following table reflects the total dividends, interest accrued on dividends, and terminal dividends credited on the policies on the dates the policies were surrendered to the respective insurance companies:

| Policy | Deposited dividends | Interest accrued on dividends | Terminal dividend |
|---|---|---|---|
| Mutual Benefit | $2,450.00 | $761.45 | $28.08 |
| John Hancock | 2,114.00 | 680.35 | |
| New England | 418.70 | 143.38 | 79.60 |

The table below reflects the dividends and the interest earned on the dividends credited to the policies indicated for the years 1942 to 1958, inclusive:

| Year | New England | | John Hancock | | Mutual Benefit | |
|---|---|---|---|---|---|---|
| | Dividend | Interest | Dividend | Interest | Dividend | Interest |
| 1942 | $34.80 | | $222.00 | | $215.50 | |
| 1943 | 34.80 | $1.13 | 160.80 | $6.66 | 216.50 | $6.47 |
| 1944 | 34.90 | 2.30 | 162.40 | 11.68 | 217.00 | 13.15 |
| 1945 | 34.90 | 4.11 | 163.60 | 16.91 | 218.50 | 20.06 |
| 1946 | 35.00 | 4.16 | 165.20 | 22.32 | 163.50 | 27.22 |
| 1947 | 35.00 | 6.05 | 100.00 | 27.95 | 156.50 | 32.94 |
| 1948 | 17.60 | 6.81 | 100.00 | 31.79 | 70.00 | 38.62 |
| 1949 | 17.50 | 7.55 | 100.00 | 35.74 | 68.00 | 41.88 |
| 1950 | 17.40 | 8.30 | 100.00 | 39.81 | 66.00 | 45.18 |
| 1951 | 17.20 | 9.07 | 100.00 | 44.01 | 64.50 | 48.51 |
| 1952 | 17.00 | 9.86 | 100.00 | 48.33 | 62.50 | 51.90 |
| 1953 | 16.80 | 10.66 | 100.00 | 52.78 | 121.00 | 55.33 |
| 1954 | 17.60 | 11.49 | 100.00 | 57.36 | 120.50 | 60.62 |
| 1955 | 17.30 | 12.36 | 100.00 | 62.08 | 152.50 | 66.06 |
| 1956 | 23.70 | 13.15 | 100.00 | 66.94 | 185.50 | 73.83 |
| 1957 | 23.00 | 15.93 | 120.00 | 74.95 | 183.50 | 81.73 |
| 1958 | 24.20 | 17.33 | 120.00 | 81.04 | 168.50 | 89.82 8.14 |

Amounts earned under the policies and credited to petitioner's account which were described as "dividends" in the policies were stipulated to have been derived from the following sources:

(1) *Interest.*—In the computation of premiums and reserves, the issuing company assumes that interest will be earned by it at a conservative rate. To the extent that the actual rate realized is larger, "excess interest" earnings become available for dividend purposes.

(2) *Excess Mortality Reserves.*—In the computation of premiums and reserves, the issuing company assumes that death claims will occur according to a conservative standard of mortality. To the extent that mortality losses which had been assumed exceed the actual losses, the excess amount becomes available for dividends.

(3) *Decreases in Administrative Costs.*—This amount includes a decrease in taxes.

During the fall of 1958, petitioner decided it would be advantageous to dispose of his policies to enable him to use the proceeds for other needs. On or about November 5, 1958, petitioner agreed to transfer to James D. Rosenbaum, his insurance underwriter, the three policies and in exchange Rosenbaum agreed to pay petitioner the cash surrender value of the policies and all accrued dividends and interest earned as of that date less $1,000, the latter amount representing Rosenbaum's

profit on the transaction. It was agreed between the parties that Rosenbaum would, upon receipt of the policies, surrender them to the respective companies and then use the proceeds to extinguish his debt to petitioner arising from the aforementioned transaction.

On or about November 5, 1958, petitioner executed a written assignment of the policies to Rosenbaum by which in form the latter became the absolute owner of all of the policies, giving his demand note equal in amount to the cash surrender value of the policies and all accrued dividends and interest as payment for the policies. The underwriter surrendered the policies to the insurance companies between the dates of November 20, 1958, and December 1, 1958, and in exchange received the following amounts:

| Policy | Surrender date | Payment date | Cash surrender value | Dividends and interest | Total |
|---|---|---|---|---|---|
| Mutual Benefit | Nov. 20, 1958 | Nov. 28, 1958 | $46,421.50 | $3,239.53 | $49,661.03 |
| John Hancock | Dec. 1, 1958 | Dec. 1, 1958 | 36,980.00 | 2,794.35 | 39,774.35 |
| New England | Nov. 24, 1958 | Nov. 24, 1958 | 9,222.80 | 641.68 | 9,864.48 |
| Total | | | | | 99,299.86 |

which he then forthwith disbursed to the petitioner. Petitioner then returned the promissory note to Rosenbaum and paid him $1,000.

On their joint income tax return for the calendar year 1958, petitioner and his wife reported $31,606.86 as long-term capital gain realized on the sale of the respective policies. (The $31,606.86 figure represents the difference between the proceeds on surrender of the policies, $99,299.86, less the cost of the policies, $66,693, and less the $1,000 [1] paid to Rosenbaum.)

Respondent in his notice of deficiency determined that petitioner "realized ordinary income" in the amount of $31,606.86 from the sale of the insurance policies.

### ULTIMATE FINDING.

Petitioner, as principal, surrendered the three policies through Rosenbaum, as his agent, received the proceeds, and paid $1,000 to Rosenbaum as an agent's fee.

### OPINION.

Shortly before the respective maturity dates, petitioner, in form, assigned to a third party three insurance policies. He contends that the transfers constituted bona fide sales of capital assets held for more than 6 months and that the excess of the sales price over the net cost and sales expense is taxable as capital gain.

[1] No issue is raised herein with respect to the proper treatment of the $1,000 payment to Rosenbaum.

In the alternative, petitioner contends that if the gain or any portion thereof realized from the surrender of the policies constitutes ordinary income, nevertheless that part of the gain represented by the annual increments in the cash surrender value and interest on deposited dividends is not taxable to him for 1958 but was properly taxable to him during each of those years in which he owned the policies, on the theory that he was in constructive receipt of such amounts.

It is the contention of the respondent that the transaction between petitioner and the broker was not a bona fide sale, but constituted a mere agency relationship between him and the broker. In the alternative, respondent contends that if we decide the parties entered into a bona fide sale, the consideration received by petitioner pursuant to the sale was essentially a substitute for what would otherwise have been received as ordinary income and is taxable as such. Respondent further contends that the constructive receipt doctrine has no application since the import of section 72(e) of the Internal Revenue Code of 1954 is that the cash surrender value and interest on deposited dividends are deemed received in the year of sale, surrender, or redemption and are to be taxed upon the occurrence of any of these events. Respondent also contends that the constructive receipt doctrine has no application because petitioner's right to receive the moneys during the years in issue in which he owned the policies was subject to substantial limitations.

Petitioner, in form, assigned to his insurance broker for value all right, title, and interest in the policies. We are convinced, however, that for tax purposes there was no sale of the policies but that the relationship between petitioner and Rosenbaum was one of principal and agent, and that petitioner merely surrendered the policies to the respective insurance companies through his agent.

In holding as we do, we are not unmindful of our decisions in *Bolling Jones, Jr.*, 39 T.C. 404 (1962); *Estate of Gertrude H. Crocker*, 37 T.C. 605 (1962); and *Harry Roff*, 36 T.C. 818 (1961), affd. 304 F. 2d 450 (C.A. 3, 1962), in which we upheld the sales of various insurance policies to third parties. Those cases are distinguishable from this in that, here, the petitioner retained the incidents of ownership in the policies until their surrender. Rosenbaum, as agent, was bound to surrender the policies and forthwith to pay petitioner the proceeds; and his obligation to pay petitioner arose only after the surrender of the policies. These factors negative the possibility of holding that the parties entered into a sales agreement.

Having determined that petitioner in fact surrendered the policies to the respective companies, his net realized gain of $31,606.86 from

the transaction is taxable as ordinary income pursuant to section 72 of the 1954 Code.[2] In view of this result, it is unnecessary for us to reach a decision as to respondent's alternative contention.

The only question remaining is whether petitioner should be deemed to have constructively received the annual increments in the cash surrender values of the policies and accrued interest on deposited dividends during each of the years in which he owned the policies. Petitioner argues that these amounts were constructively received by him in prior years and were therefore properly taxable to him only in those years and thus would increase his basis in the policies and reduce his net realized gain upon the sale or surrender thereof.

During each of the years in which petitioner owned the policies, excluding the first, the cash surrender value was increasing. We agree that such increase is in the nature of "interest earned on a savings bond." However, this fact does not automatically lead to the conclusion that petitioner should be deemed to have constructively received the annual increments in the cash surrender value during those years.

The doctrine of constructive receipt implements the statutory requirement imposed by section 451(a)[3] which provides that—

any item of gross income shall be included in the gross income for the taxable year in which [it is] received by the taxpayer * * *.

---

[2] SEC. 72. ANNUITIES: CERTAIN PROCEEDS OF ENDOWMENT AND LIFE INSURANCE CONTRACTS.

(e) AMOUNTS NOT RECEIVED AS ANNUITIES.—

(1) GENERAL RULE.—If any amount is received under an annuity, endowment, or life insurance contract, if such amount is not received as an annuity, and if no other provision of this subtitle applies, then such amount—

(A) if received on or after the annuity starting date, shall be included in gross income; or

(B) if subparagraph (A) does not apply, shall be included in gross income, but only to the extent that it (when added to amounts previously received under the contract which were excludable from gross income under this subtitle or prior income tax laws) exceeds the aggregate premiums or other consideration paid.

For purposes of this section, any amount received which is in the nature of a dividend or similar distribution shall be treated as an amount not received as an annuity.

(2) SPECIAL RULES FOR APPLICATION OF PARAGRAPH (1).—For purposes of paragraph (1), the following shall be treated as amounts not received as an annuity:

(A) any amount received, whether in a single sum or otherwise, under a contract in full discharge of the obligation under the contract which is in the nature of a refund of the consideration paid for the contract; and

(B) any amount received under a contract on its surrender, redemption, or maturity. In the case of any amount to which the preceding sentence applies, the rule of paragraph (1)(B) shall apply (and the rule of paragraph (1)(A) shall not apply).

[3] SEC. 451. GENERAL RULE FOR TAXABLE YEAR OF INCLUSION.

(a) GENERAL RULE.—The amount of any item of gross income shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under the method of accounting used in computing taxable income, such amount is to be properly accounted for as of a different period.

The doctrine requires the inclusion in gross income of amounts which although not within the physical possession of the taxpayer, were actually available to him. *Ross* v. *Commissioner*, 169 F. 2d 483 (C.A. 1, 1948). It may also be invoked by a taxpayer to defeat an attempt by the Commissioner to assess a tax in a later year, even though he has not reported the amounts as income in the earlier year. Such taxpayer will be deemed to have constructively received income which is credited to his account or set apart for him only when it is subject to his unfettered command. However, income will not be deemed to have been constructively received by the taxpayer where the rights to receive such amounts are subject to substantial limitations or restrictions (sec. 1.451–2(a), Income Tax Regs.[4]).

In the case before us we hold that the petitioner's right to receive the cash surrender value including periodic increments thereof was subject to such "substantial restrictions" as to make inapplicable the doctrine of constructive receipt. Petitioner would have been required to surrender his entire investment in the policies in order to realize that income. It has been held that there is no constructive receipt of income where one must surrender a valuable right in order to realize it. *James F. Edwards*, 37 T.C. 1107 (1962); *Florence H. Griffith*, 35 T.C. 882 (1961); *Estate of W. T. Hales*, 40 B.T.A 1245 (1939). In *Florence H. Griffith, supra*, we held that where it was necessary for the taxpayer to divest herself of her entire interest in an insurance policy in order to receive the cash surrender value and dividends, such income was not deemed to have been constructively received by her as credited to her periodically. In *Estate of W. T. Hales, supra*, subscribers to building and loan association shares were required to make a downpayment of $50 per share, and each share was to mature when the downpayment, plus dividends declared and credited, equaled the sum of $100. The shareholders were entitled to surrender their shares before maturity and receive the amounts paid for the shares and the accumulated dividends. We held that, because taxpayers could have received the cash only by surrendering their entire interest, this was a sufficient restriction to make inapplicable the doctrine of constructive receipt (*Estate of W. T. Hales, supra* at 1248).

With regard to amounts earned by petitioner on dividends left on deposit with the respective insurance companies, we find that such

[4] Sec. 1.451–2 Constructive receipt of income.

(a) *General rule.* Income although not actually reduced to a taxpayer's possession is constructively received by him in the taxable year during which it is credited to his account or set apart for him so that he may draw upon it at any time. *However, income is not constructively received if the taxpayer's control of its receipt is subject to substantial limitations or restrictions.* Thus, if a corporation credits its employees with bonus stock, but the stock is not available to such employees until some future date, the mere crediting on the books of the corporation does not constitute receipt. [Emphasis added.]

amounts are properly denoted as interest [5] and, upon the periodic crediting of such interest to the account of the petitioner by the respective insurance companies, was subject to his unfettered right to withdraw it. Each insurance policy listed three types of options as to the payment of dividends earned. Petitioner elected the same type of option with respect to each policy and the class of option so chosen provided that he could leave the dividends on deposit with the companies to earn interest at a fixed rate per annum. The options provided in addition that the accumulations of dividends and interest earned thereon were "withdrawable in cash on demand" by the insured. See sec. 1.61–7(d), as amended, Income Tax Regs.

These factors lead us to the conclusion that the interest so credited to petitioner's account from the date of purchase of the policies to, but not including, 1958 was constructively received by him during each of the years in which he owned the policies and is not includable in his gross income for 1958. Therefore, while petitioner's gain on the surrender of the policies was $31,606.86, this amount, less the interest which we hold was constructively received by him in years prior to 1958, is taxable as ordinary income in 1958 pursuant to section 72(e) of the Code.

*Decision will be entered under Rule 50.*

---

[5] Interest is defined as compensation allowed by law or fixed by the parties for the use of money. *Deputy v. Du Pont*, 308 U.S. 488 (1940).