Walter F. Burns, Jr., and Evangeline W. Burns v. Commissioner.
Burns v. Commissioner
Docket No. 4383-63.
United States Tax Court
T.C. Memo 1965-299; 1965 Tax Ct. Memo LEXIS 30; 24 T.C.M. (CCH) 1652; T.C.M. (RIA) 65299; November 15, 1965
David C. Moore, 701 Bank of Delaware Bldg., Wilmington, Del., for the petitioners. Donald W. Howser, for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The respondent has determined a deficiency in petitioners' income tax for 1957 in the amount of $12,589.23. The parties have agreed on stipulation that respondent is entitled to claim an increased deficiency for 1957 in the amount of $1,827.56. The issues presented for our decision are (1) whether petitioners realized ordinary income or capital gain from a transaction purporting to be a disposition of certain annuity contracts, and (2) whether they realized the amounts in question in *31 1957 or in 1955. Additional issues presented by the pleadings have been disposed of by concession or stipulation of the parties. Findings of Fact Petitioners, husband and wife, filed their joint income tax return for the year 1957 with the district director of internal revenue at Baltimore, Maryland. During the years 1954 through 1957, petitioner Walter F. Burns, Jr., was engaged as a life insurance salesman. Petitioner sold annuity contracts which were issued to the following individuals on the following dates by Standard Life Insurance Company of Indiana, sometimes hereinafter referred to as Standard: Contract No.
Issued to
Issue date
AN 52639
H. B. Garrett
9-14-51
AN 52640
T. W. Harris
9-14-51
AN 56415
S. Lenher
8-18-52
AN 56416
S. Lenher
8- 5-52
AN 56417
S. Lenher
8- 5-52
AN 55359
H. B. Garrett
1- 2-52
AN 61689
R. W. Hooker
12-28-53
AN 61690
R. W. Hooker
12-28-53
AN 61691
R. L. Murray
12-28-53
AN 61692
R. L. Murray
12-28-53
One of the purposes of such persons in acquiring such annuity contracts was to obtain interest deductions for Federal income tax purposes for certain amounts which they purportedly paid to Standard *32 on loans made by Standard in connection with such contracts, similar to the arrangement involved in Knetsch v. United States, 364 U.S. 361 (1960). Attached to each contract was a receipt for the full payment in advance of the annual premiums for the contract and an annuity loan agreement. The latter reflected a large loan to the contract owner and provided that interest thereon was payable in advance and that the loan was payable solely out of the security for the loan, consisting of the annuity contract and the premiums paid thereunder. Each contract provided for a death benefit to be paid to the owner-beneficiary upon the death of the annuitant before any annuity payment had been made. Because of certain developments in the law of Federal income taxation, the owners of the annuity contracts attempted, prior to December 1954, to surrender the contracts to Standard and receive a refund of the cash surrender values, consisting of amounts described as interest which had been paid in advance on the contract loans. Standard refused to accept such surrender of the annuity contracts except upon terms that would have resulted in a loss to the owners of the contracts rather *33 than a refund. Petitioner, after consulting with attorneys, believed that Standard was at fault in refusing to refund the prepaid interest. He approached the owners and offered, in consideration of their transferring the contracts to him, to assume their liabilities on the contract loans, to institute suit against Standard to recover the amount refundable under the terms of the contract, and to pay the contract owners a percentage of the recovery made from Standard. On December 21, 1954, the owners of the annuity contracts executed written assignments to petitioner Evangeline W. Burns of all of their right, title, and interest in the annuity contracts, and the right to recover the entire amount prepaid by them. Petitioners agreed to pay each of the contract owners 75 percent of the net recovery on their respective contracts after deducting the cost in connection with the recovery, up to but not to exceed a prescribed amount. The annuity contracts were assigned to Evangeline Burns because petitioner Walter Burns recorded title to his home and other property in her name so that they would not be a part of his estate in the event of his death. However, he actually handled all matters *34 in connection with the annuity contracts. On December 22, 1954, petitioners forwarded to Standard the annuity contracts, together with the assignments to Evangeline Burns. They thereby surrendered five of the contracts, Nos. AN 55359, AN 61691, AN 61692, AN 61689, and AN 61690, and demanded the net surrender values thereof as of the next immediate anniversary date of such contracts, including all prepaid interest. They requested that the assignments of the balance of the contract be recorded and that the contracts be returned to them. On December 30, 1954, Standard wrote to petitioners advising that it would permit surrender of the contracts provided the surrender values were computed by charging interest on the annuity loans at 4 percent for the time that the loans would have run if the contract owners were permitted to repay only 10 percent of the loans in any contract year in accordance with certain provisions of the annuity loan agreements. On June 14, 1955, Evangeline Burns, represented by attorneys, filed suit against Standard in the Superior Court of the State of Delaware for New Castle County, seeking to recover the sum of $9,141.95, alleged to be the amount refundable *35 under annuity contract No. AN 55359 and the loan agreement on January 2, 1952. On July 20, 1955, Standard filed an answer and counterclaim in such suit in which it contested her claim and alleged that, under the provisions of the annuity loan agreement which limited the repayment of the contract loan to not more than 10 percent in any contract year, the contract could not be surrendered as of January 2, 1955, without first offering Standard the sum of $4,824.13. In its counterclaim, Standard demanded judgment for the amount of $4,824.13. On July 20, 1955, the attorneys representing Evangeline Burns mailed a copy of Standard's answer and counterclaim to petitioner. Walter Burns and Fin Dallas Sparre had been personal friends for about 15 years. On July 28, 1955, Evangeline Burns executed an assignment to Sparre of the five annuity contracts which had not been surrendered to Standard. The assignment was subject to the indebtedness on the contracts contracted by the original owners. Sparre executed a note payable to Evangeline Burns on demand in the amount of $57,077.03, with interest payable at 3 percent per annum. Walter Burns believed he needed money to pay off a mortgage on *36 petitioners' home and this was their primary purpose in making the annuity contract assignments and obtaining the note from Sparre. On July 29, 1955, Sparre mailed to Standard the five annuity contracts and the assignments thereof from Evangeline Burns and demanded the surrender values thereof, including the prepaid interest, as of their next anniversary dates. Standard wrote Sparre in reply that the contracts could not be surrendered in the manner indicated in his letters, that under the provisions of the annuity loan agreement and loan rules not more than 10 percent of the principal amount of the contract loans could be repaid in any contract year, and that it estimated that if the contracts were surrendered on their next anniversary date, the contract holders would actually be indebted to Standard for the interest required to cover the 10-year term of the loans. The aggregate amount of the cash surrender values demanded by petitioners on the contracts surrendered by them on December 22, 1954, was approximately $38,948. The aggregate amount of the cash surrender values demanded on the contracts surrendered by Sparre was $81,424. Standard would not agree to pay the full amount *37 demanded upon surrender of the annuity contracts. Petitioner contacted the original owners and obtained their agreement to accept a smaller amount from an aggregate settlement with Standard than they originally were entitled to receive under their agreement with petitioners. On or about January 30, 1957, Standard paid $91,000 to petitioners' attorneys in settlement of the claims made on the 10 annuity contracts, and the attorneys disbursed that amount as follows: Morris, Nichols, Arsht, and
Tunnell fees and expenses
$ 9,402.93
Evangeline W. Burns
$31,129.26 less
$ 8,358.16 expenses
22,771.10
F. Dallas Sparre
$59,870.74 less
$ 1,044.77 expenses
58,825.97 Such allocation of expenses was made pursuant to the joint instructions of petitioners and Sparre. The expenses consisted of $9,100 of legal fees and $302.93 of other expenses, which were all of the legal expenses and fees paid to the attorneys with respect to the claims against Standard. Upon his receipt of the check in the amount of $58,825.97 from the proceeds of such settlement, Sparre issued his personal check in the amount of $58,075.97 to Evangeline Burns. The promissory note in the amount of $57,077.03 *38 executed by Sparre was marked paid in full, with interest at 3 percent amounting to $998.94. Petitioners paid the following amounts to the original owners of the annuity contracts issued by Standard out of the settlement proceeds: Harold B. Garrett (Contract
No. AN 52639)
$ 632.81
Harold B. Garrett (Contract
No. AN 55359)
2,976.91
R. W. Hooker
3,756.62
T. W. Harris, Jr.
9,630.40
R. L. Murray
4,966.99
Samuel Lenher
10,262.75
In their joint income tax return for the year 1957, petitioners reported an aggregate gross sales price in the amount of $81,597.67 and long-term capital gains in the amount of $39,218.06 from the dispositon of the 10 annuity contracts. In his notice of deficiency the respondent determined that petitioners realized ordinary income in the amount of $45,395.99 in connection with the recoveries made in 1957 pursuant to the annuity contracts. Ultimate Findings Petitioners realized ordinary income in 1957 from the settlement proceeds received from Standard on five annuity contracts plus the proceeds of the note collected from Sparre. Opinion Petitioners contend that the income which they received from the transfer of five annuity *39 contracts to Fin Dallas Sparre is properly reportable as long-term capital gain which was realized at the time they received his promissory note in the amount of $57,077.03 in 1955. They further contend that the amount which was received in 1957 in connection with the five annuity contracts surrendered to Standard Life Insurance Company of Indiana in 1954 was an amount received under an annuity contract and is taxable under the spread provisions contained in section 72(e)(3) of the Internal Revenue Code of 1954. The respondent has taken the position that all the income realized by petitioners in connection with the 10 annuity contracts is ordinary income which was realized in 1957. The respondent also contends that petitioners are not entitled to claim the benefit of the provisions of section 72(e)(3) of the Code with respect to the five contracts surrendered to Standard in 1954. The respondent first advances the argument that petitioners are not entitled to claim long-term capital gains treatment with respect to the amounts received from the disposition of five annuity contracts to Fin Dallas Sparre in 1955 because they had never actually acquired the beneficial *40 ownership of such contracts pursuant to the assignment agreements executed by the original owners of the contracts on December 21, 1954. In support of his contention on this point, the respondent relies on our decision in Theodore H. Cohen, 39 T.C. 1055, in which the taxpayer, in form, transferred certain endowment insurance policies to his insurance broker just prior to their maturity date. The taxpayer was the original purchaser of the policies. Under the arrangement, the insurance agent was to receive $1,000 profit upon surrendering the policies to the insurance companies and paying the balance of the proceeds to the taxpayer. The agent, in fact, carried out the agreement, surrendering the policies to the issuers thereof, retaining $1,000 for himself and paying the balance of the recovery to the taxpayer. We there held that the relationship between the taxpayer and the insurance agent was one of principal and agent, that the policyholder had never actually parted with the incidents of ownership in the policies, and that, in fact and in substance, no sale of the policies by the original owner had taken place. We are of the opinion that the situation here falls within *41 the scope of our decision in Theodore H. Cohen, supra. Although in form the assignments which were executed on December 21, 1954, appear to be valid and absolute transfers of beneficial ownership in the 10 annuity policies to Evangeline Burns, it is our view that in substance the assignment agreements were inoperative to vest in her more than certain contractual rights and an agent's authority to institute suit on behalf of the policyholders. Prior to December 21, 1954, the owners of the annuity contracts had attempted to surrender their policies to Standard Life Insurance Company and had claimed refunds of the cash surrender values consisting of amounts described as interest which had been paid in advance on the contract loans. Standard refused to accept a surrender of the policies except upon terms that would have resulted in a loss to the owners rather than a refund. In this situation the owners - apparently feeling that half a loaf was better than none - entered into an arrangement with petitioners under which they agreed on the policyholders' behalf to bring suit against Standard and to pay the owners a percentage of the net amount recovered. This arrangement, as *42 we regard it, amounted to nothing more than a contingent fee contract under which petitioners undertook to perform services by pressing the owners' claims against Standard with the parties agreeing to divide between them any resulting recovery. See Ansorge v. Commissioner, 147 F. 2d 459, affirming 1 T.C. 1160. Evangeline Burns received formal assignments of the annuity contracts from the owners for the sole purposes of surrendering them to Standard and, if necessary, of commencing litigation. Petitioners have not shown that they had any intention to acquire the policies as investments. They paid the owners nothing for the assignments and were under no obligation to pay the assignors anything at all unless they succeeded in receiving a refund from Standard. Under these circumstances we do not believe that for tax purposes the owners of the annuity contracts in question transferred their beneficial ownership therein to petitioner Evangeline Burns. Since Evangeline Burns did not in substance acquire the annuity policies from the owners thereof, she could not transfer any property interest therein to Fin Dallas Sparre pursuant to the assignment agreement executed *43 on July 28, 1955, and we therefor hold that the income which petitioners realized in connection with the contracts in 1957 cannot qualify as gain resulting from the sale or exchange of a capital asset. Petitioners also contend that the amount which was recovered by Evangeline Burns in 1957 as a result of the surrender of five annuity contracts to Standard Life Insurance Company of Indiana in 1954 was an amount received under an annuity contract within the meaning of section 72(e)(3) of the 1954 Code. [1] Inasmuch as petitioners have failed to show that Evangeline Burns in substance actually acquired any of the five policies surrendered to Standard, we are unable to find that the amounts recovered were received by Evangeline Burns "under an annuity contract" within the meaning of section 72(e)(3) of the Code. Accordingly, the respondent's determination is sustained. *44 Decision will be entered under Rule 50. Footnotes
1. SEC. 72. ANNUITIES: CERTAIN PROCEEDS OF ENDOWMENT AN LIFE INSURANCE CONTRACTS. * * *
(e) Amounts Not Received as Annuities. - * * *
(3) Limit on Tax Attributable to Receipt of Lump Sum. - If a lump sum is received under an annuity, endowmennt, or life insurance contract, and the part which is includable in gross income is determined under paragraph (1), then the tax attributable to the inclusion of such part in gross income for the taxable year shall not be greater than the aggregate of the taxes attributable to such part had it been included in the gross income of the taxpayer ratably over the taxable year in which received and the preceding 2 taxable years.↩