T.C. Memo. 2007-189

UNITED STATES TAX COURT

BARBARA E. SEAMAN, Petitioner $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 22048-05.                    Filed July 16, 2007.

Barbara E. Seaman, pro se.

Sandra M. Jefferson, for respondent.

MEMORANDUM OPINION

CHIECHI, Judge:  This case is before the Court on petitioner's motion for summary judgment that the Court has recharacterized as petitioner's motion for partial summary judgment (petitioner's motion)[1] and respondent's cross-motion for

_____

[1]In petitioner's motion, petitioner seeks summary judgment
(continued...)

partial summary judgment (respondent's motion).[2]  We shall deny petitioner's motion, we shall grant respondent's motion, and we shall, sua sponte, grant summary judgment for respondent on the second of the two issues raised in petitioner's motion.

## Background

The record establishes and/or the parties do not dispute the following.

Petitioner resided in Alexandria, Virginia, at the time she filed the petition in this case.

Petitioner and her former husband, Thomas Martin Seaman (Mr. Seaman), married on or about April 26, 1960.

During 1964, petitioner purchased a life insurance policy (Prudential policy) on her life from The Prudential Insurance Company of America (Prudential) that was in force at least throughout 2003, the year at issue in this case.  The Prudential policy provides in pertinent part:

---

[1](...continued)
on two issues and notes that respondent concedes a third issue. See infra note 2.

[2]In respondent's motion, respondent seeks summary judgment on the first, but not the second, of the two issues raised in petitioner's motion and concedes a third issue arising from one of the determinations that respondent made in the notice of deficiency (notice) that respondent issued to petitioner for her taxable year 2003.  Thus, that third issue is resolved by respondent's concession, and not by summary adjudication by the Court.

DIVIDEND PROVISIONS

**Annual Dividends**.--While this policy is in force other than as extended or reduced paid-up insurance, the portion, if any, of the divisible surplus of the Company accruing upon the policy at each policy anniversary will be determined annually by the Board of Directors, and will be credited to the policy as a dividend on such anniversary provided all premiums due hereunder have been paid in full to such anniversary and the Insured is living at that time.

(**Notice.**--There probably will not be any divisible surplus from which to credit any dividend to this policy before the third policy anniversary.)

Upon proper written request to the Home Office, any such dividend may be (1) paid in cash, or (2) applied to the reduction of any premium then due, or (3) applied at the net single premium rate at the Insured's attained age to provide a paid-up life insurance addition, or (4) left to accumulate with compound interest at the rate authorized from time to time by the Board of Directors, but not less than 2½% per annum.  If no other option has been elected within 31 days after the policy anniversary, any such dividend will be paid in cash * * *.  Upon proper written request to the Home Office, * * * any dividend accumulations may be withdrawn unless * * * they have been applied to modify any non-forfeiture value as provided in the policy or are required as security for a loan on the policy. * * *

In the application for the Prudential policy, petitioner elected to have dividends accumulate with interest.

During 1969, Mr. Seaman purchased a life insurance policy (USAA policy) on his life from USAA Life Insurance Company (USAA) that was in force at least throughout 2003.  The USAA policy provides in pertinent part:

**DIVIDENDS**.  At the end of the second Policy year and annually thereafter, while in force except as extended term insurance, this Policy shall be credited with such

share of the divisible surplus of the participating business of the Company as may be apportioned thereto by the Company.

Options.   At the option of the Owner each dividend may be
  (a) paid in cash, or
  (b) applied in reduction of any premium then due, or
  (c) applied to provide a participating paid-up addition to the Amount of Insurance under this Policy (hereinafter called life addition), or
  (d) left to accumulate to the credit of this Policy with interest, as determined by the Company, at not less than 2½% per annum, compounded annually (here-inafter called dividend accumulation), or
  (e) applied to purchase a non-participating one year term insurance addition (hereinafter called term addition), payable in event that the Insured's death occurs within one year from the date on which such dividend becomes due, but terminating without grace or notice at the end of one year from the due date of such dividend.

Any option may be elected in the application for this Policy or by written request to the Company at its Home Office and such election will be effective until re-voked; * * *.   Election of any option or revocation thereof shall apply only to dividends becoming due thereafter, except that, at the option of the Owner, election of any option may be made retroactive to a dividend due within thirty-one days prior thereto.   If no dividend option is elected prior to the date a dividend becomes due or within thirty-one days thereaf-ter, such dividend will be applied by the Company under Option (d) * * *.

At any time * * * dividend accumulations * * * may be withdrawn.   * * *

In the application for the USAA policy, Mr. Seaman elected to have dividends accumulate with interest.

On July 24, 1986, petitioner and Mr. Seaman divorced pursu-ant to an agreed final decree of divorce (petitioner's divorce

decree) entered by the District Court for the 285th Judicial District, Bexar County, Texas. Petitioner's divorce decree incorporated by reference an agreement incident to divorce that set forth, inter alia, an agreement on the division of the marital estate (petitioner's property settlement agreement).

Petitioner's divorce decree provided in pertinent part:

6. <u>Retirement Benefits</u>.

The Court finds that based on BARBARA EDITH SEA-MAN's marriage to THOMAS MARTIN SEAMAN for eighteen (18) of the twenty (20) years THOMAS MARTIN SEAMAN served in the United States Army, BARBARA EDITH SEAMAN is entitled to fifty percent (50%) of the disposable military retired pay currently being received by THOMAS MARTIN SEAMAN and a like percentage of disposable military retired pay which THOMAS MARTIN SEAMAN shall receive in the future.

*     *     *     *     *     *     *

IT IS ORDERED AND DECREED that the U. S. Army pay BARBARA EDITH SEAMAN fifty percent (50%) of THOMAS MARTIN SEAMAN's current and future retired military pay directly beginning with the first payment on August 1, 1989.

Petitioner's property settlement agreement provided in pertinent part:

4.03  <u>Assets Awarded to BARBARA EDITH SEAMAN</u>

BARBARA EDITH SEAMAN is awarded the following as her sole and separate property, and THOMAS MARTIN SEAMAN is divested of all right, title, interest, and claims in and to such property:

*     *     *     *     *     *     *

d.  Any and all policies of life insurance pur-
    chased during the marriage to include the
    USAA, AMAA and Prudential policies which

insure the life [of] THOMAS MARTIN SEAMAN.

\* \* \* \* \* \* \*

g.  Fifty percent (50%) of the disposable mili-
tary retired pay currently being received by
THOMAS MARTIN SEAMAN and a like amount of
disposable military retired pay which THOMAS
MARTIN SEAMAN shall receive in the future.

As of the date on which petitioner's divorce became effec-
tive, section 1408 of title 10 of the United States Code (title
10) defined the term "disposable retired pay" to which peti-
tioner's divorce decree and petitioner's property settlement
agreement referred.  That section provided in pertinent part:

**§ 1408.  Payment of retired or retainer pay in compli-
ance with court orders**

(a) In this section:

\* \* \* \* \* \* \*

(4) "Disposable retired \* \* \* pay" means the total
monthly retired \* \* \* pay to which a member [of an
armed force or a uniformed service] is entitled \* \* \*
less amounts which--

\* \* \* \* \* \* \*

(C) are properly withheld for Federal, State,
or local income tax purposes, if the withholding
of such amounts is authorized or required by law
and to the extent such amounts withheld are not
greater than would be authorized if such member
claimed all dependents to which he was entitled;

10 U.S.C. sec. 1408(a)(4)(C) (1982 & Supp. IV 1986).

On November 5, 1990, Congress enacted the National Defense
Authorization Act for Fiscal Year 1991, Pub. L. 101-510 (NDA
Act), 104 Stat. 1485.  As pertinent here, in the NDA Act, Con-

gress amended section 1408(a)(4) of title 10 by deleting from that section subparagraph (C) (quoted above).  NDA Act sec. 555(b)(3), 104 Stat. 1569.  As amended, section 1408 of title 10 no longer reduces disposable retired pay (i.e., the total monthly retired pay to which a member of an armed force or a uniformed service is entitled) by amounts "properly withheld for Federal, State, or local income tax purposes".  10 U.S.C. sec. 1408(a)(4).  Congress made its amendment of section 1408 of title 10 applicable to divorces that became effective on or after February 3, 1991.  NDA Act sec. 555(e)(2), 104 Stat. 1570.  (We shall refer to disposable retired pay as that term is defined for divorces that became effective prior to February 3, 1991, as pre-amendment disposable retired pay.  We shall refer to disposable retired pay as that term is defined for divorces that became effective on or after February 3, 1991, as post-amendment disposable retired pay.)

In August 1989, the Finance and Accounting Center of the United States Department of the Army (AFAC) began making the monthly payments to petitioner that petitioner's divorce decree and petitioner's property settlement agreement required and that were equal to 50 percent of Mr. Seaman's pre-amendment disposable retired pay.  In 1991, the Defense Finance and Accounting Service (DFAS) assumed the operations of AFAC and continued to make such payments to petitioner.

During the fall of 1992, petitioner received a "Notice to Former Spouse" from DFAS (DFAS notice). That notice stated in pertinent part:

> The Internal Revenue Service has recently ruled that Defense Finance and Accounting Service must with- hold federal income tax on amounts received as a divi- sion of retired pay. A Form 1099R (Distributions From Pensions, Annuities, Retirement or Profit Sharing Plans, IRA's Insurance Contracts, etc.) will be issued. It will reflect the former spouse's gross entitlement and federal income tax withheld for payments received by former spouses as a division of property for the calendar year. * * * No change is required in the computation of the amount due the former spouse, taxes are still allowed as a deduction before dividing the retired pay. Amounts reflected on the Form 1099-R issued to the former spouse will be excluded from the Form 1099-R issued to the retiree.
>
> Tentative plans call for first issuing Form 1099-R and withholding federal income taxes on property pay- ments paid to former spouses in 1993. * * * [Reproduced Literally.]

Before DFAS implemented the plans that it announced in the DFAS notice, inter alia, to withhold Federal income tax (tax) on amounts to which a former spouse is entitled "as a division of retired pay", neither DFAS nor AFAC withheld tax from the monthly payments that each made to petitioner pursuant to petitioner's divorce decree and petitioner's property settlement request.

Around early 1993, DFAS implemented certain of the plans that it announced in the DFAS notice and, inter alia, began withholding tax on the monthly amounts of pre-amendment dispos- able retired pay to which petitioner is entitled under peti- tioner's divorce decree and petitioner's property settlement

agreement.

During 2003, petitioner was entitled to monthly amounts of pre-amendment military retired pay totaling $13,809.35. During that year, DFAS paid her that total amount less $1,354.71, the tax that DFAS withheld on that total amount.

DFAS also implemented certain of the other plans that it announced in the DFAS notice and, inter alia, issued to petitioner Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., for her taxable year 2003 (petitioner's 2003 Form 1099-R). That form showed $13,809.35 as both "Gross distribution" and "Taxable amount" and $1,354.71 as "Federal income tax withheld".

Prudential issued to petitioner Form 1099-INT, Interest Income (Form 1099-INT), for her taxable year 2003 (petitioner's 2003 Prudential Form 1099-INT) with respect to the interest for that year on any dividend accumulations under petitioner's Prudential policy. That form showed $191.45 as "INTEREST INCOME" (2003 interest on petitioner's Prudential policy dividend accumulations).

USAA issued to petitioner Form 1099-INT for her taxable year 2003 (petitioner's 2003 USAA Form 1099-INT) with respect to the interest for that year on any divided accumulations under petitioner's USAA policy. That form showed $435.87 as "INTEREST INCOME" (2003 interest on petitioner's USAA policy dividend

accumulations).

Petitioner timely filed a tax return for her taxable year 2003 (petitioner's 2003 return). In that return, petitioner did not include in her gross income (1) the $13,809.35 that DFAS showed as both "Gross distribution" and "Taxable amount" in petitioner's 2003 Form 1099-R, (2) the $191.45 of 2003 interest on petitioner's Prudential policy dividend accumulations that Prudential showed in petitioner's 2003 Prudential Form 1099-INT, and (3) the $435.87 of 2003 interest on petitioner's USAA policy dividend accumulations that USAA showed in petitioner's 2003 USAA Form 1099-INT. In petitioner's 2003 return, petitioner did not claim as tax withheld the $1,354.71 that DFAS showed as "Federal income tax withheld" in petitioner's 2003 Form 1099-R.

In the notice that respondent issued to petitioner for her taxable year 2003, respondent determined, inter alia, to include in petitioner's gross income (1) the $13,809.35 that DFAS showed as both "Gross distribution" and "Taxable amount" in petitioner's 2003 Form 1099-R, (2) the $191.45 of 2003 interest on peti-tioner's Prudential policy dividend accumulations that Prudential showed in petitioner's 2003 Prudential Form 1099-INT, and (3) the $435.87 of 2003 interest on petitioner's USAA policy dividend accumulations that USAA showed in petitioner's 2003 USAA Form

1099-INT.[3]  In the notice that respondent issued to petitioner
for her taxable year 2003, respondent also increased the total
payments of tax shown in petitioner's 2003 return by $1,354.71,
the amount that DFAS showed as "Federal income tax withheld" in
petitioner's 2003 Form 1099-R.

## Discussion

The Court may grant summary judgment where there is no
genuine issue of material fact and a decision may be rendered as
a matter of law.  Rule 121(b);[4] <u>Sundstrand Corp. v. Commissioner</u>,
98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994).

We consider initially the first of the two issues raised in
petitioner's motion and the only issue raised in respondent's
motion, namely, whether petitioner must include in her gross
income for her taxable year 2003 the $13,809.35 that DFAS showed
as both "Gross distribution" and "Taxable amount" in petitioner's
2003 Form 1099-R.  The parties agree, and we conclude, that there
is no genuine issue of material fact regarding that issue.[5]

---

[3]In the notice, respondent rounded all amounts.

[4]All Rule references are to the Tax Court Rules of Practice
and Procedure.  Unless otherwise indicated, all section refer-
ences are to the Internal Revenue Code in effect for the year at
issue.

[5]Petitioner contends that, when DFAS began withholding tax
from the amount to which she is entitled under petitioner's
divorce decree and petitioner's property settlement agreement, it
also began calculating the amount to which she is entitled under
that divorce decree and property settlement agreement as 50
(continued...)

The United States Court of Appeals for the Fourth Circuit (Court of Appeals), in which an appeal in this case would normally lie, and this Court have addressed the precise issue presented here. Pfister v. Commissioner, 359 F.3d 352 (4th Cir. 2004), affg. T.C. Memo. 2002-198. In Pfister v. Commissioner, 359 F.3d 352, the taxpayer took substantially the same position that petitioner takes here. The taxpayer maintained there that the term "disposable retired pay" used in the divorce decree in question was calculated after tax was withheld and that therefore the taxpayer should not be taxed upon the amount of such disposable retired pay to which the taxpayer was entitled under that divorce decree. In rejecting the taxpayer's position, the Court of Appeals stated:

> Pfister does not contend that her ex-husband's military retirement pay is not a pension; rather, based upon Pfister's flawed interpretation of the * * * definition of "disposable retired pay" Pfister contends that she is statutorily entitled to her portion of her former husband's retirement pay without any tax liability. Pfister's argument is without merit.

> \* \* \* \* \* \* \*

---

[5](...continued) percent of Mr. Seaman's post-amendment disposable retired pay, rather than 50 percent of Mr. Seaman's pre-amendment disposable retired pay. Resolution of petitioner's contention is not material to our resolution of the issue presented. In any event, that contention is rejected by the DFAS notice that petitioner received in the fall of 1992. That notice stated in pertinent part: "No change is required in the computation of the amount due the former spouse, taxes are still allowed as a deduction before dividing the retired pay."

* * * Essentially, Pfister argues that because "disposable retired pay," by definition, is calculated after taxes are withheld, it should not be taxed upon payment to the retiree's spouse or former spouse. Implicit in that argument is Pfister's contention that she is not the <u>owner</u> of one-half of her former husband's retirement pay. Therefore, the issue becomes whether Pfister owns her portion of her ex-husband's retirement pay.

We hold that Pfister is the owner of one-half of her former husband's retirement pay, and she is therefore liable to pay the * * * income tax deficiency. * * *

     *     *     *     *     *     *     *

It is well established that military retirement payments "are gross income to the party who owns the right to those payments pursuant to the division of property in a divorce." Moreover, as the Tax Court noted, "[i]t is axiomatic in Federal tax law that income is taxable to the legal owner of the * * * property producing the income." Pfister provides no theory on which to contradict this conclusion. Accordingly, we conclude that the Tax Court properly deemed Pfister to be the owner of one-half of her former husband's military retirement pay. [Citations omitted.]

<u>Pfister v. Commissioner</u>, <u>supra</u> at 353-355.

We conclude that the holding of the Court of Appeals and its rationale underlying that holding in <u>Pfister v. Commissioner</u>, 359 F.3d 352, which were based upon this Court's holding and its rationale underlying that holding in <u>Pfister v. Commissioner</u>, T.C. Memo. 2002-198, are controlling in the instant case. On the record before us, we find that, pursuant to petitioner's divorce decree and petitioner's property settlement agreement, petitioner is the owner of 50 percent of Mr. Seaman's disposable retired

pay. On that record, we hold that the $13,809.35 that DFAS showed as both "Gross distribution" and "Taxable amount" in petitioner's 2003 Form 1099-R is includible in petitioner's gross income for her taxable year 2003.[6]

We consider now the second issue raised in petitioner's motion, namely, whether the $191.45 of 2003 interest on petitioner's Prudential policy dividend accumulations that Prudential showed in petitioner's 2003 Prudential Form 1099-INT and the $435.87 of 2003 interest on petitioner's USAA policy dividend accumulations that USAA showed in petitioner's 2003 USAA Form 1099-INT are includible in petitioner's gross income for her taxable year 2003.

In petitioner's motion, petitioner alleges that, in order to have been able to withdraw during 2003 the 2003 interest on petitioner's Prudential policy dividend accumulations and the 2003 interest on petitioner's USAA policy dividend accumulations, she was required to surrender the Prudential policy and the USAA policy. As a result, according to petitioner, her control over the receipt of such interest during 2003 was subject to a substantial limitation or restriction.

In respondent's response to petitioner's motion (respon-

---

[6]We note that in the notice that respondent issued to petitioner for her taxable year 2003 respondent increased the total payments of tax shown in petitioner's 2003 return by $1,354.71, the amount that DFAS showed as "Federal income tax withheld" in petitioner's 2003 Form 1099-R.

dent's response), respondent alleges that petitioner was able to withdraw during 2003 the 2003 interest on petitioner's Prudential policy dividend accumulations and the 2003 interest on petitioner's USAA policy dividend accumulations without surrendering the policies in question. However, respondent maintains in that response that, in order to establish that allegation, "testimony from a representative of the insurance companies is necessary". Thus, according to respondent, a genuine issue of material fact exists "concerning whether the petitioner could have withdrawn the interest in 2003, without surrendering the life insurance policies."

In petitioner's reply to respondent's response (petitioner's reply), petitioner modifies her position in petitioner's motion that she was required to surrender the policies in question in order to have withdrawn during 2003 the 2003 interest on petitioner's Prudential policy dividend accumulations and the 2003 interest on the USAA policy dividend accumulations. In petitioner's reply, petitioner acknowledges that surrendering those policies was not the only way for her to have been able to make such withdrawals of such interest. In that reply, petitioner concedes that "there are provisions under which dividends can be withdraw[n] with the associated interest." However, according to petitioner,

> While dividends can be withdrawn with the associated
> interest, the reverse is not true. Interest cannot be

withdrawn without withdrawing dividends; that means, in petitioner's case, that in order to withdraw all of the interest earned in 2003, petitioner would have had to request in writing * * * the withdrawal of all the dividends accumulated since the inception of the policies. * * * In order to withdraw the 2003 interest of $191.45 and $435.87, respectively, petitioner would have had to either surrender the policies for their cash value of $8,935.93 and $18,656.31, respectively, or withdraw all of the dividends accumulated over more than 25 years, amounting to $6,380.81 and $13,267.54 on the Prudential and USAA policies, respectively. * * * Petitioner proposes that the restrictions on the withdrawal of the 2003 interest are sufficiently substantial * * *.

In respondent's reply to petitioner's reply (respondent's reply), respondent asserts in pertinent part:

petitioner makes two factual misstatements concerning the terms of the insurance policies. First, the insurance policies do not explicitly or implicitly state that the petitioner must surrender the insurance policies in order to obtain interest on the accumulated dividends. Second, the insurance policies do not explicitly or implicitly state that the petitioner must withdraw all of the accumulated dividends for the entire term of the policies in order to withdraw any of the interest on the accumulated dividends. There is absolutely nothing in the insurance policies in support of the petitioner's erroneous factual statements. * * *

Respondent maintains in respondent's reply that a trial is necessary in order to show that petitioner's contentions as to the circumstances under which she was able to withdraw during 2003 the interest at issue are wrong. Thus, according to respondent, there is a genuine issue of material fact not only as to whether petitioner was able to withdraw during 2003 the interest at issue without surrendering the policies in question but also as to whether petitioner was required to withdraw all of the

respective dividend accumulations under those policies in order to have been able to make such withdrawals of such interest.  We disagree.

The Prudential policy provides in pertinent part:

> **Annual Dividends**.--While this policy is in force * * *, the portion, if any, of the divisible surplus of the Company accruing upon the policy at each policy anniversary will be determined annually by the Board of Directors, and will be credited to the policy as a dividend on such anniversary * * *.
>
>      *       *       *       *       *       *       *
>
> Upon proper written request to the Home Office, any such dividend may be (1) paid in cash, or * * * (4) left to accumulate with compound interest at the rate authorized from time to time by the Board of Directors, but not less than 2½% per annum. * * * Upon proper written request to the Home Office, * * * any dividend accumulations may be withdrawn * * *.

The USAA policy provides in pertinent part:

> **DIVIDENDS**.  At the end of the second Policy year and annually thereafter, * * * this Policy shall be credited with such share of the divisible surplus of the participating business of the Company as may be apportioned thereto by the Company.
>
> Options.  At the option of the Owner each dividend may be
> > (a) paid in cash, or
>
>      *       *       *       *       *       *       *
>
> > (d) left to accumulate to the credit of this Policy with interest, as determined by the Company, at not less than 2½% per annum, compounded annually (hereinafter called dividend accumulation), or
>
>      *       *       *       *       *       *       *
>
> At any time * * * dividend accumulations * * * may be withdrawn.  * * *

We find no ambiguity in the respective above-quoted provisions of the Prudential policy and the USAA policy as to whether petitioner was able to withdraw during 2003 the respective amounts of interest at issue without surrendering those policies. We find those respective provisions to be clear: they allowed petitioner to make such withdrawals of such interest without surrendering those policies. We conclude that there is no genuine issue of material fact as to whether petitioner was able to withdraw during 2003 the 2003 interest on petitioner's Prudential policy dividend accumulations and the 2003 interest on petitioner's USAA policy dividend accumulations without surrendering the policies in question.

In contrast, we find an ambiguity in the respective above-quoted provisions of the Prudential policy and the USAA policy as to whether petitioner was required to withdraw during 2003 all of the respective dividend accumulations under those policies in order to have withdrawn during that year the interest at issue. Thus, we agree with respondent that there is a genuine issue of fact with respect to that question. However, we disagree with respondent that resolution of that genuine issue of fact is material to our determination of whether the 2003 interest on petitioner's Prudential policy dividend accumulations and the 2003 interest on petitioner's USAA policy dividend accumulations are includible in petitioner's gross income for her taxable year

2003. That is because our determination of whether such interest is so includible does not depend upon the resolution of that genuine issue of fact. We conclude that there is no genuine issue of material fact as to whether petitioner was required to withdraw during 2003 all of the respective dividend accumulations under the Prudential policy and the USAA policy in order to have withdrawn during that year the interest at issue.[7]

Having concluded that there is no genuine issue of material fact with respect to our determination of the second issue presented in petitioner's motion, namely, whether the interest at issue is includible in petitioner's gross income for her taxable year 2003, we shall now address that issue. In resolving it, we turn to certain regulations under sections 61 and 451 for guidance. As pertinent here, regulations under section 61 provide:

> § 1.61-7. Interest.--(a) In general. As a general rule, interest received by or credited to the taxpayer constitutes gross income and is fully taxable. * * * For rules determining the taxable year in which interest, including interest accrued or constructively received, is included in gross income, see section 451 and the regulations thereunder. * * *

> *   *   *   *   *   *   *

---

[7]Respondent maintains that if we were to conclude, as we have, that there is no genuine issue of material fact as to the withdrawal of interest under the policies in question, respondent is entitled to summary judgment on whether the interest at issue under those policies is includible in petitioner's gross income for her taxable year 2003. In support of that position, respondent relies on certain regulations under secs. 61 and 451 and Cohen v. Commissioner, 39 T.C. 1055 (1963) (discussed below). See infra note 9.

(d) * * * <u>interest on life insurance</u>. * * * Where accrued interest on unwithdrawn insurance policy dividends is credited annually and is subject to withdrawal annually by the taxpayer, such interest credits constitute gross income to such taxpayer as of the year of credit. However, if under the terms of the insurance policy the interest on unwithdrawn policy dividends is subject to withdrawal only on the anniversary date of the policy (or some other date specified therein), then such interest shall constitute gross income to the taxpayer for the taxable year in which such anniversary date (or other specified date) falls.

As pertinent here, regulations under section 451 provide:

**§ 1.451-2. Constructive receipts of income.**-- (a) <u>General rule</u>. Income although not actually reduced to a taxpayer's possession is constructively received by him in the taxable year during which it is credited to his account, set apart for him, or otherwise made available so that he may draw upon it at any time, or so that he could have drawn upon it during the taxable year if notice of intention to withdraw had been given. However, income is not constructively received if the taxpayer's control of its receipt is subject to substantial limitations or restrictions. * * * In the case of interest, dividends, or other earnings (whether or not credited) payable in respect of any deposit or account in a bank, building and loan association, savings and loan association, or similar institution, the following are not substantial limitations or restrictions on the taxpayer's control over the receipt of such earnings:

*     *     *     *     *     *     *

(3) A requirement that the earnings may be withdrawn only upon a withdrawal of all or part of the deposit or account. * * *

*     *     *     *     *     *     *

(b) <u>Examples of constructive receipt</u>. * * * Accrued interest on unwithdrawn insurance policy dividends is gross income to the taxpayer for the first taxable year during which such interest may be withdrawn by him.

In Cohen v. Commissioner, 39 T.C. 1055 (1963), we considered, inter alia, the precise issue presented in the instant case. The pertinent provisions of the respective insurance policies involved in Cohen are materially the same as the pertinent provisions of the respective policies involved here.[8] In Cohen v. Commissioner, supra, we applied the above-quoted respective regulations under sections 61 and 451 in determining whether the respective amounts of interest on certain dividend accumulations under the insurance policies involved there were includible in the gross income of the taxpayer for the taxable year in which such interest was credited or earned. In holding that such amounts of interest were so includible, we stated:

> With regard to amounts earned by petitioner on dividends left on deposit with the respective insurance companies, we find that such amounts are properly denoted as interest and, upon the periodic crediting of such interest to the account of the petitioner by the respective insurance companies, was subject to his

---

[8]One of the policies involved in Cohen v. Commissioner, 39 T.C. 1055 (1963), provided in pertinent part: "Under the Accumulation plan, Dividends are retained by the Company and accumulated at Interest, compounded yearly * * *. The Accumulation may be withdrawn within thirty-one days after the end of any Policy year during the whole of which this Policy shall have been in force * * *." Id. at 1056. Another of the policies involved in Cohen provided in pertinent part: "surplus distributions [policyholder dividends] may be * * * left on deposit with the Company to accumulate with interest * * *, payable with proceeds of the policy or withdrawable in cash on demand". Id. at 1057. The remaining policy involved in Cohen provided in pertinent part: "Each * * * dividend, at the option of the Owner, shall be * * * left with the Company to accumulate, with interest * * *, and payable at maturity or on demand." Id. at 1058.

unfettered right to withdraw it. Each insurance policy listed three types of options as to the payment of dividends earned. Petitioner elected the same type of option with respect to each policy and the class of option so chosen provided that he could leave the dividends on deposit with the companies to earn interest at a fixed rate per annum. The options provided in addition that the accumulations of dividends and interest earned thereon were "withdrawable in cash on demand" by the insured. See sec. 1.61-7(d), as amended, Income Tax Regs.

These factors lead us to the conclusion that the interest so credited to petitioner's account from the date of purchase of the policies to, but not including, 1958 was constructively received by him during each of the years in which he owned the policies * * *. [Fn. ref. omitted.]

Cohen v. Commissioner, supra at 1063-1064.

We conclude that our holding and our rationale underlying that holding in Cohen v. Commissioner, supra, are controlling in the instant case.[9] On the record before us, we find that the $191.45 of 2003 interest on Prudential policy dividend accumulations that Prudential showed in petitioner's 2003 Prudential Form 1099-INT and the $435.87 of 2003 interest on USAA policy dividend accumulations that USAA showed in petitioner's 2003 USAA Form 1099-INT are includible in petitioner's gross income for her taxable year 2003. We conclude that respondent is entitled as a matter of law to summary adjudication on the issue of whether such interest is so includible. We shall, sua sponte, grant

_____

[9]Respondent agrees that Cohen v. Commissioner, supra, controls the resolution of whether the interest at issue here is includible in petitioner's gross income.

summary judgment for respondent on that issue.

We have considered all of the contentions and arguments of the parties that are not discussed herein, and we find them to be without merit, irrelevant, and/or moot.

To reflect the foregoing and respondent's concession,

<u>An order denying petitioner's motion and granting respondent's motion will be issued and decision will be entered under Rule 155</u>.